[No. S015184. Nov. 25, 1991.]

CYNTHIA S. CALVERT, Petitioner, v.
THE STATE BAR OF CALIFORNIA, Respondent.

768

**COUNSEL**

Cynthia S. Calvert, in pro. per., and L. W. Holt for Petitioner.

Diane C. Yu, Richard J. Zanassi, Colin P. Wong and E. Lisa Vorgias for Respondent.

OPINION

**THE COURT.***—The Review Department of the State Bar Court (review department) has recommended that petitioner Cynthia S. Calvert be suspended from the practice of law in California for three years, that execution of the suspension order be stayed, and that she be placed on probation for one year upon conditions that include actual suspension from the practice of law for six months. The recommendation is based on the review department's findings that in one matter petitioner failed to perform competently, continued representation of her client though she knew she could not perform competently, and withdrew from employment without taking reasonable steps to avoid prejudice to the client.

Petitioner contends that a new hearing should be held before a new hearing panel because the hearing referee failed to disqualify himself when required by law to do so, that prejudicial errors in the exclusion of evidence require a new hearing, that certain aggravating circumstances were improperly found, and that the recommended discipline is excessive.

We conclude the following: petitioner waived the claim that the hearing referee improperly failed to disqualify himself; even though evidentiary errors occurred, they do not require a new hearing; the evidence is insufficient to support one of the three disciplinary violations found; two aggravating circumstances are unsupported by the record; and the recommended discipline is excessive. We further conclude that the period of actual suspension imposed should be 60 days, not 6 months as recommended by the review department.

BACKGROUND

Petitioner was admitted to the practice of law in California in January 1978. Petitioner has a prior record of discipline; she was suspended for 90 days in 1990. The review department's decision states that petitioner has no prior record of discipline; the decision, however, was issued before the July 1990 order suspending petitioner.[1]

---

*Before Lucas, C. J., Mosk, J., Panelli, J., Kennard, J., Arabian, J., George, J., and Low (Harry), J.†

†Presiding Justice, Court of Appeal, First Appellate District, Division Five, assigned by the Chairperson of the Judicial Council.

[1]The prior discipline involved a failure to perfect a mechanic's lien, and a failure in the same matter to respond to letters from the State Bar. Petitioner and the State Bar entered into a stipulation as to facts, culpability, and recommended discipline. The stipulation provided that with the exception of the period of actual suspension, the discipline imposed would be

## 1. *The McKnight Matter*

This disciplinary proceeding arises from petitioner's representation of Doris McKnight (McKnight). This matter involves two critical issues: whether petitioner adequately communicated with McKnight, and whether petitioner's posttrial legal strategy was one that a competent attorney could reasonably have adopted. The parties presented sharply conflicting evidence on both critical issues. Because the evidentiary errors that are discussed below require an analysis of the effect of the errors on the hearing as a whole, a somewhat detailed review of the evidence is necessary. Although there were other witnesses, the key witnesses were McKnight and petitioner.

### a. *The State Bar's Evidence*

In November 1982, McKnight substituted petitioner in place of Mary Louise Frampton as her attorney in an employment discrimination suit against her employer, Commercial Union Insurance Co. (Commercial Union). In May 1984, the case was tried. The trial court filed a statement of decision in McKnight's favor in September 1984 and awarded McKnight $23,895 in damages.

Five days later, petitioner wrote to McKnight that she had received the final decision of the court and would "see that judgment is entered and the cost bill and attorneys fee bill filed with the court and opposing counsel." But judgment was not entered. Commercial Union made a motion for a new trial, which was denied in November 1984.

In December 1984, petitioner wrote to McKnight, asking her to "get together all the bills and expenses [she] had incurred" so that petitioner could "file the judgment and cost bill ASAP." In early January 1985, McKnight delivered the requested documents to petitioner.

In January 1985, Commercial Union filed a notice of appeal, which was eventually withdrawn pending the entry of judgment. McKnight stated that petitioner called her to notify her that Commercial Union had filed the notice of appeal.

In February 1985, the Commercial Union office in Fresno closed. McKnight called petitioner and left word of the closure and her layoff with petitioner's secretary.

concurrent with the discipline to be imposed in this case. The parties stipulated that the period of actual suspension imposed in that matter, however, would be served consecutively to the period of actual suspension in this case.

This court imposed the recommended discipline in the mechanic's lien matter in July 1990, and denied a motion to consolidate that matter with this case in August 1990.

McKnight testified that, apart from receiving monthly billing statements and a letter concerning witness fees from petitioner, she had no further communication with petitioner until December 1985. But McKnight had attempted to speak with petitioner over the telephone at least once a month and more frequently toward the end of the year. McKnight stated that petitioner was not available and did not return her calls.

In late 1985, McKnight called the courthouse to check on the status of the case. She was informed that Commercial Union had abandoned its appeal in February 1985. In early December 1985, she called petitioner at home and spoke with her; petitioner told McKnight that she had not filed the judgment, apologized for not doing so, and said she would take care of the matter when she returned from Christmas vacation.

McKnight testified that she called petitioner's office nine or ten times in the first three months of 1986 and that she kept notes of the conversations with petitioner, her secretary, or her law partner. These notes were admitted into evidence. In February 1986, McKnight was told that petitioner had insufficient time to attend to her case and that her case was not "emergency work." In early March 1986, petitioner's secretary called McKnight and told her petitioner was working on her case. In late March, McKnight called petitioner's office for the last time. Petitioner would not speak to McKnight, but her secretary told McKnight that petitioner was working on her case.

In early April 1986, McKnight filed a complaint with the Client Relations Committee of the Fresno County Bar Association. In mid-May, Jan Biggs, an attorney handling the matter for the association, sent a letter to petitioner requesting that she contact him regarding the complaint. Biggs called petitioner three or four times in the weeks after he sent the letter, but petitioner did not reply to the letter or return his phone calls. In mid-June 1986, Biggs sent petitioner another letter about McKnight's complaint; petitioner did not respond.

In July 1986, McKnight filed a complaint against petitioner with the State Bar. In November 1986, she substituted her former attorney, Mary Louise Frampton, as her attorney to replace petitioner. Frampton subsequently caused the judgment to be filed, and made a motion for attorney fees. The trial court awarded attorney fees of $21,199.95. Commercial Union then filed a notice of appeal. Approximately six months after Frampton became McKnight's attorney, the court reporter's notes for the trial were destroyed. Thereafter, the parties settled the lawsuit for $21,500.

## b. *Petitioner's Evidence*

Petitioner's evidence consisted of her own testimony and the testimony of Attorney Mary Louise Frampton.[2] Frampton's testimony, which was stricken by the hearing panel, is discussed below in connection with the argument that it was error to strike it.[3]

Petitioner testified that in early 1985, after Commercial Union filed its notice of appeal, she decided to use a strategy of waiting before having the judgment entered. This strategy was based on the "hard-line position" of Commercial Union and its attorneys, who were adamantly opposed to settlement and intent on vindication. Petitioner concluded that with the passage of time certain events might occur that would facilitate settlement of the case on favorable terms without an appeal.

Specifically, these anticipated events involved: (1) the planned retirement of McKnight's former supervisor, Mr. Rubke, who had appeared to be influential in Commercial Union's handling of the case and who had exhibited personal animosity toward McKnight; (2) an impending consolidation and reorganization of Commercial Union's management; (3) the impending closure of Commercial Union's Fresno office, at which McKnight continued to work; (4) the lessening of the "ego involvement" of Commercial Union's trial attorney with the passage of time; and (5) the possibility of a new attorney taking responsibility for the litigation. Petitioner concluded that if some of these events occurred, Commercial Union and its counsel would begin to evaluate the case "in a more realistic [fashion] . . . not only legally but economically."

Petitioner stated that the judgment would include a provision that McKnight would receive 10 percent interest on the damages from the date the complaint was filed, and petitioner believed that this added to the attractiveness of the waiting strategy. Petitioner also explained that McKnight owed her approximately $6,000 in fees, that further expenses would be incurred on any appeal, and that the strategy would give McKnight "time to regroup."

Petitioner explained this choice of strategy to McKnight several times in 1985, and McKnight acquiesced in the strategy. Also, from February 1985 through May 1986, petitioner spoke with McKnight about her case several

[2]Although petitioner was called as a witness by the State Bar, her testimony formed the basis of her defense to the disciplinary charges, and thus is summarized in this section.

[3]The pertinent testimony of the State Bar's witness Robert A. Hawley is also discussed in connection with this issue.

times, and was known by McKnight to be available to discuss the case at times convenient to McKnight.

When petitioner received the letter from the Fresno County Bar Association in May 1986, she telephoned McKnight. McKnight was very hostile to her. Petitioner asked McKnight to contact her later, but did not remember further details of the conversation. Petitioner explained that she did not respond to the letter from Attorney Biggs on behalf of the Fresno County Bar Association because Biggs had previously represented her in another matter and she had had a "very bad experience" with him, and because Biggs's firm had "gone on record saying they would never have a woman lawyer because they don't think women can be lawyers . . . ." Petitioner also believed that it would hurt her relationship with McKnight to deal with Biggs.

Petitioner considered filing a motion to withdraw from the case, but because there were no other attorneys in Fresno who had expertise in employment discrimination cases brought by employees, she rejected this alternative as amounting to "abandonment." Petitioner made a considered decision that it would be in the best interests of her client to continue with her strategy.

Petitioner discussed with Mary Louise Frampton the possibility that Frampton would take over McKnight's case, and McKnight and Frampton made arrangements for Frampton to do so. Petitioner cooperated by preparing the substitution of attorney form, delivering her files to Frampton, and assisting in preparation of the attorney fee motion filed by Frampton.

### 2. Proceedings Before Hearing Panel and Review Department

The hearing panel, consisting of a single referee, found that petitioner had violated Rules of Professional Conduct, former rules 2-111(A)(2) (withdrawing from employment without taking reasonable steps to avoid foreseeable prejudice to client), 6-101(A)(2) (intentionally or with reckless disregard failing to perform legal services competently), and 6-101(B)(1) (continuing legal representation with knowledge of insufficient time, resources or ability to perform competently).

The hearing panel generally accepted McKnight's version of events, but did not explain how petitioner's conduct violated each of the rules at issue. The hearing panel found that petitioner's posttrial legal strategy was motivated by a desire to discourage Commercial Union from pursuing an appeal; that petitioner did not "clearly explain the matter" to McKnight; that although Commercial Union's Fresno office did close down, petitioner did not

pursue settlement negotiations; and that petitioner intentionally failed to return McKnight's telephone calls.

In mitigation, the hearing panel found that petitioner had no record of prior discipline, and that she was "known to be among the few attorneys in her community who regularly are available to represent minorities, women and less favored members of society."

In aggravation, the hearing panel concluded that petitioner's violations of former rules 2-111(A)(2), 6-101(A)(2) and 6-101(B)(1) of the Rules of Professional Conduct of the State Bar were wilful, and that although petitioner had attended the first four hearing sessions in the matter, she had failed to attend the remaining four hearing sessions. The hearing panel deemed this failure to attend to be a lack of cooperation, and found that petitioner had deprived the State Bar's counsel of the opportunity to examine her regarding issues that arose during cross-examination by petitioner's counsel. The hearing panel further found that petitioner's delay was the "primary cause" of the destruction of the reporter's notes.

The hearing panel recommended that petitioner be suspended from the practice of law for three years, that execution of the suspension be stayed, and that she be placed on probation for one year and actually suspended for six months.

The review department, by a vote of nine to two, adopted the decision and recommendation of the hearing panel.

## DISCUSSION

### 1. *Disqualification of Referee*

Petitioner contends a new hearing is necessary because the hearing referee improperly failed to disqualify himself.

After the fourth day of hearings in this matter, on September 12, 1988, petitioner filed a "declaration of disqualification," seeking to disqualify the referee for cause under rule 230 of the Rules of Procedure of the State Bar (rule 230) and Code of Civil Procedure section 170.3, based on certain comments the referee made off the record.

On September 22, 1988, the referee issued a written ruling declining to disqualify himself, but drawing petitioner's attention to her right to seek review of his decision under the Rules of Procedure of the State Bar.

The disciplinary hearing proceeded on several hearing dates and, on March 30, 1989, the referee issued a written decision on the merits. Petitioner did not raise the issue of disqualification again until April 1989, after the referee's decision.

■ The State Bar contends that by failing to timely seek review of the referee's decision not to disqualify himself, petitioner waived the issue. We agree.

Under rule 230 petitioner had 10 days from the referee's denial of her challenge to file a motion with the presiding referee seeking the recusal of the referee she had challenged.[4] Petitioner did not do so. We conclude she waived the claim of prejudice by failing to seek timely review. (See *Tarver* v. *State Bar* (1984) 37 Cal.3d 122, 130, fn. 2 [207 Cal.Rptr. 302, 688 P.2d 911]; *Hamilton* v. *State Bar* (1979) 23 Cal.3d 868, 878 [153 Cal.Rptr. 602, 591 P.2d 1254].)

Petitioner's argument that the final paragraph of rule 230 compels a different result has no merit. That paragraph provides: "Situations in which the grounds for disqualification are discovered or arise after the referee has made one or more rulings shall be governed by the provisions of section 170.3, subdivision (b)(3), of the Code of Civil Procedure." That subdivision, which has since been renumbered as subdivision (b)(4), states: "In the event that grounds for disqualification are first learned . . . after the judge has made one or more rulings . . . the judge shall, unless the disqualification be waived, disqualify himself or herself, but in the absence of good cause the rulings he or she has made up to that time shall not be set aside by the judge who replaces the disqualified judge."

Contrary to petitioner's contention, rule 230's incorporation of Code of Civil Procedure section 170.3, subdivision (b)(4) does not abrogate the 10-day period within which to seek review of a referee's refusal to disqualify himself or herself. The rule merely addresses the continuing effect of rulings made by a referee before the referee was disqualified.

2. *Evidentiary Errors*

Petitioner makes two claims of evidentiary error. She contends that the referee erred in refusing to allow petitioner to impeach complaining witness

---

[4] Rule 230 provides, in pertinent part: "A referee assigned to a particular matter may recuse himself or herself. Where grounds for a challenge have been established, the referee shall recuse himself or herself. If recusal is not made . . . [and if] the challenged referee was not assigned at a master calendar session . . . the motion for disqualification may be presented to the presiding referee within ten (10) days after the affected referee denied the challenge, and the presiding referee shall act on the motion within five (5) days of its receipt."

McKnight with evidence of financial bias, and in striking the entire testimony of defense witness Mary Louise Frampton, the successor to petitioner as McKnight's attorney.

The rules of evidence in civil cases are generally followed in attorney discipline hearings. (Rules Proc. of State Bar, rule 556.)

### a. Refusal to Allow Impeachment of McKnight

■ Petitioner contends that the referee erroneously refused to allow her to impeach complaining witness McKnight with evidence of financial bias.

As noted earlier, petitioner's testimony and McKnight's differed substantially on several material issues. Petitioner testified that McKnight consented to the strategy to delay entering the judgment; McKnight testified that she was not aware of the strategy. Petitioner testified that during the period from February 1985 through May 1986 she spoke with McKnight about her case several times, and was known by McKnight to be available to discuss the case at times convenient to McKnight; McKnight testified that she attempted to speak with petitioner numerous times during this period, but was never able to reach her, and petitioner never returned McKnight's phone calls.

On cross-examination, petitioner attempted to impeach McKnight with evidence of her financial interest in the outcome of the disciplinary proceeding. Specifically, petitioner sought to elicit evidence showing that McKnight had intentionally failed to timely pay petitioner's bills in full and had falsely complained to the State Bar as part of a scheme to evade paying the remainder of her attorney fees.

The referee refused to allow petitioner to inquire into these matters for impeachment purposes. The referee cited no specific evidentiary basis for his ruling, but stated that he had "never heard of anything so outrageous in my life."

The refusal to allow impeachment of the witness was erroneous. Generally, any fact or circumstance tending to show that a witness has a financial interest in the outcome of a legal proceeding is a proper ground for impeachment. (3 Witkin, Cal. Evidence (3d ed. 1986) Introduction of Evidence at Trial, §§ 1915, 1918, pp. 1870, 1873; see Evid. Code, §§ 780, subd. (f), 785.) In this case, the hearing panel should have allowed petitioner to attempt to show that McKnight had a financial incentive in seeing that petitioner was disciplined, as a means of strengthening her malpractice case.

■ This court generally requires a showing of specific prejudice for procedural errors to invalidate the determination of the hearing panel. (*Stuart v. State Bar* (1985) 40 Cal.3d 838, 845 [221 Cal.Rptr. 557, 710 P.2d 357].) The rules of criminal procedure do not apply in attorney discipline proceedings, and reversible error will be found only when the errors complained of resulted in a deprivation of a fair hearing. (*Id.* at p. 845; *Walker v. State Bar* (1989) 49 Cal.3d 1107, 1115-1116 [264 Cal.Rptr. 825, 783 P.2d 184]; *Rosenthal v. State Bar* (1987) 43 Cal.3d 612, 634 [238 Cal.Rptr. 377, 738 P.2d 723]; see also Rules Proc. of State Bar, rule 556.)

■ Here, the referee's erroneous refusal to allow petitioner to impeach McKnight does not require a new hearing. Petitioner was able to elicit testimony on essentially the same grounds later in the hearing. Petitioner's further cross-examination of McKnight revealed that at the time of the disciplinary hearing McKnight had owed petitioner more than $6,000 in attorney fees for almost four years. Petitioner also elicited from McKnight that she had filed a civil complaint against petitioner. This evidence, though not precisely congruent with the impeachment evidence petitioner was precluded from introducing, did tend to show that McKnight had a financial interest in the outcome of the proceeding. Under the circumstances, we conclude that the referee's erroneous refusal to allow impeachment of McKnight did not deprive petitioner of a fair hearing. (See *Stuart v. State Bar, supra,* 40 Cal.3d at p. 845.)

b. *Striking of Defense Witness Frampton's Testimony*

■ Petitioner further contends that the referee erred in striking the entire testimony of defense witness Mary Louise Frampton.

On direct examination, Frampton testified that she was the original attorney for McKnight in the action against her employer; that Frampton was substituted out of the case due to a conflict in 1982; and that on Frampton's recommendation, petitioner became McKnight's new counsel. Frampton described petitioner as a highly qualified and competent attorney and as one of only two attorneys in the Fresno area who was available to take plaintiffs' discrimination cases on a regular basis. Frampton added that if during the spring of 1986 petitioner had withdrawn as counsel for McKnight, it would have been difficult for McKnight to obtain successor counsel.

Frampton testified that the "tactical waiting strategy" used by petitioner could be a "very positive strategy for the plaintiff" in light of the closing of the Commercial Union office in Fresno after the trial and in view of the uncertainties of appeal. In Frampton's opinion, it was "very likely" that if a

judgment in McKnight's case had been entered and an appeal taken, there would be no decision yet.

Frampton stated that petitioner had a very good reputation for truthfulness and competency in the community, and that she had a very good opinion of petitioner's truthfulness and competency.

On cross-examination, the State Bar inquired into McKnight's communications with Frampton during the period petitioner represented McKnight. Frampton provided details concerning when she had been contacted by McKnight, but when the hearing examiner for the State Bar asked Frampton about the purpose of a particular communication with McKnight, petitioner raised the issue of attorney-client privilege. Petitioner further requested that the State Bar be instructed not to inquire into conversations between Frampton and McKnight because such questions went beyond the scope of direct examination. Frampton then conferred off the record with McKnight, who was present.

When the hearing resumed, Frampton said that she was "not sure" whether the testimony she had previously given created an attorney-client conflict or could jeopardize McKnight in forthcoming negotiations with her former employer. The referee then stated he would entertain a motion to excise the entire testimony of Frampton. The State Bar so moved, petitioner opposed the motion, and it was granted.

Petitioner contends that it was prejudicial error for the referee to strike Frampton's testimony.

The apparent basis for the referee's ruling was Frampton's statement that she was unsure whether her testimony created a conflict or would jeopardize McKnight's case. Thus, although the referee did not state it in these terms, the basis for striking the testimony was the attorney-client privilege.

The attorney-client privilege protects "confidential communication between client and lawyer . . . ." (Evid. Code, § 954.) Confidential communications include information transmitted between attorney and client, and "a legal opinion formed and the advice given by the lawyer in the course of that relationship." (Evid. Code, § 952.)

Some of Frampton's testimony was not privileged. For example, not falling within the privilege are Frampton's statements regarding petitioner's reputation for truthfulness and competence, Frampton's opinion of petitioner's truthfulness and competence, and Frampton's statements about the

number of attorneys available to litigate discrimination actions in the Fresno area and the difficulty of obtaining legal services in such cases.

Frampton's testimony regarding the "tactical waiting strategy" used by petitioner presents a closer question. Although this testimony comprises neither information transmitted between Frampton and McKnight nor advice given to McKnight by Frampton, it is not clear whether this testimony communicates "a legal opinion formed . . . by the lawyer in the course of" the attorney-client relationship. (Evid. Code, § 952.)

But we need not decide whether Frampton's testimony concerning petitioner's posttrial strategy was a confidential communication, because we conclude that even if the testimony may have been a confidential communication, the attorney-client privilege was waived.

Evidence Code section 912, subdivision (a) provides that a privilege is waived when a holder of a privilege fails to claim the privilege in a proceeding in which he or she has the standing and opportunity to do so. In this case, those conditions were met and the privilege must be held waived. McKnight was a holder of the privilege; as a witness who was present at the hearing she had standing and opportunity to claim it; she consulted with her attorney when the issue was raised by petitioner; and she evidently failed to instruct Frampton to claim the privilege. Frampton, as McKnight's attorney, stated she was "not sure" whether her testimony created a conflict or would jeopardize McKnight's case. This equivocal statement by McKnight's attorney after consultation with McKnight amounts to a failure to claim the privilege when the opportunity arose.[5]

Moreover, at the next hearing session, the State Bar's attorney testified in detail as to confidential communications between Frampton and McKnight that were revealed to the State Bar; and at a later hearing date, McKnight herself testified in detail about her confidential communications with Frampton. These subsequent events in the same proceeding fortify our conclusion that the attorney-client privilege was waived. ■ Accordingly, it follows that it was error for the hearing panel to strike Frampton's testimony.

We turn to an assessment of this error. Frampton's testimony about petitioner's truthfulness and competence were important to petitioner's case. On the questions whether petitioner adequately communicated with

---

[5] We note that during petitioner's testimony and prior to Frampton's, McKnight orally waived the attorney-client privilege as to petitioner only. But nothing in Evidence Code section 912 indicates that an assertion of a privilege at one time precludes its waiver by conduct at a later time.

McKnight and whether McKnight consented to petitioner's strategy, the case was essentially a credibility contest. Petitioner's argument as to her credibility would have been considerably strengthened by Frampton's testimony.

Frampton's testimony concerning the merits of petitioner's "tactical waiting strategy" was vital to petitioner's defense. The importance of the issue of the reasonableness of petitioner's choice of strategy is underscored by the testimony of the State Bar's expert witness, Robert A. Hawley. Hawley, a partner in a San Francisco law firm who generally restricts his practice to the defense of large companies in employment matters, testified in response to a hypothetical question based on the facts of this case, that a delaying strategy such as that used by petitioner "is not a strategy that makes any sense to me." He further stated that the strategy was "totally perplexing" and "inconceivable."

Thus, the effect of striking Frampton's testimony concerning the reasonableness of petitioner's strategy was to remove from consideration the only testimony from a disinterested witness that supported petitioner's choice of strategy and countered the testimony of the State Bar's expert that the strategy was not one that a competent attorney could reasonably have adopted.

Nevertheless, we conclude that this error does not require a new hearing. As the discussion in the following section will make clear, even accepting petitioner's version of events and petitioner's view of the merits of the legal strategy, discipline is still warranted in this case.

### 3. *Sufficiency of Evidence*[6]

■ In reviewing State Bar cases, we accord great weight to the evidentiary findings of the review department. (*Van Sloten* v. *State Bar* (1989) 48 Cal.3d 921, 931 [258 Cal.Rptr. 235, 771 P.2d 1323].) But we independently examine the record and weigh the evidence; we are not bound by the review department's findings of fact or conclusions of law. Petitioner bears the burden of demonstrating error in the review department's findings and conclusions. (Bus. & Prof. Code, § 6083, subd. (c); see also *Sands* v. *State Bar* (1989) 49 Cal.3d 919, 928 [264 Cal.Rptr. 354, 782 P.2d 595].) The charges against an attorney must, however, be supported by convincing proof to a reasonable certainty. (*Young* v. *State Bar* (1990) 50 Cal.3d 1204, 1215-1216 [270 Cal.Rptr. 315, 791 P.2d 994].)

---

[6]Petitioner has not separately raised the issue of the sufficiency of the evidence, but in view of the discussion in the preceding section, we conclude that an analysis of the sufficiency of the evidence is warranted.

As noted earlier, the review department found that petitioner had violated former rules 2-111(A)(2), 6-101(A)(2) and 6-101(B)(1) of the Rules of Professional Conduct (unless otherwise indicated, all further references to former rules are to this source). We discuss the application of each of these rules.

■ Former rule 6-101(A)(2) provided that "[a] member of the State Bar shall not intentionally or with reckless disregard or repeatedly fail to perform legal services competently."

We conclude that this disciplinary violation is supported by the evidence. Putting aside the merits of petitioner's waiting strategy, and even accepting petitioner's version of the factual dispute as to communications with McKnight, the evidence shows that petitioner did not adequately communicate with McKnight even after receiving the letter from the Fresno County Bar Association in May 1986. This failure to communicate was unjustifiable. Adequate communication with clients is an integral part of competent professional performance as an attorney.

■ Former rule 6-101(B) stated: "[A] member of the State Bar shall not . . . (1) . . . continue representation in a legal matter when the member knows that the member does not have . . . sufficient time, resources and ability to, perform the matter with competence . . . ."

The finding that petitioner violated former rule 6-101(B)(1) is supported by the evidence. Nothing in this record shows that petitioner lacked the ability or resources to perform competently in McKnight's case. On the contrary, the evidence demonstrates that petitioner did perform competently, obtaining good results through the trial phase of the action. But there is considerable evidence that petitioner did not devote sufficient time to McKnight's case after trial. Moreover, certain uncontradicted testimony of McKnight shows that when she did speak to petitioner and petitioner's secretary in February 1986, she was told that petitioner had insufficient time to attend to her case and that her case was not "emergency work." The evidence supports the finding that petitioner continued representation of McKnight when she knew she lacked sufficient time to devote to McKnight's case.

■ Former rule 2-111(A)(2) provided that "a member of the State Bar shall not withdraw from employment until he has taken reasonable steps to avoid foreseeable prejudice to the rights of his client . . . ." The State Bar's theory is that petitioner's failure to adequately communicate with her client amounted to a withdrawal from employment. We have previously indicated that gross negligence in failing to communicate with clients may be con-

strued as abandonment. (*Walker* v. *State Bar, supra,* 49 Cal.3d 1107, 1117.) In this case, however, petitioner continued to regard herself as McKnight's attorney and continued to adhere to her legal strategy; when she concluded that the attorney-client relationship had irretrievably deteriorated, petitioner assisted in locating other counsel for McKnight. Petitioner then fully cooperated in making the successful attorney fees motion. Under the circumstances, there is no convincing proof of client abandonment, as distinguished from inexcusable failure to communicate. Moreover, the finding that petitioner withdrew from employment is inconsistent with the finding that petitioner continued representation when she knew she did not have sufficient time to perform competently.

We conclude that the evidence is sufficient to support the findings that petitioner failed to perform legal services competently and continued representation though she knew she did not have the time to perform competently, in violation of former rules 6-101(A)(1) and 6-101(B)(1), respectively. But the evidence is insufficient to support the finding that petitioner withdrew from employment without taking steps to avoid prejudice to her client, in violation of former rule 2-111(A)(2).

### 4. *Challenged Findings in Aggravation*

As will be recalled, the court reporter's notes of the trial were destroyed some three years after trial and six months after successor counsel had taken over McKnight's case. In aggravation, the review department found that petitioner "did not protect the trial record of her client's case nor did she advise the client that the record might be destroyed by the court reporter some three years after trial, in the normal course of events, thus precluding her client's ability to preserve the record if necessary." The review department further concluded that petitioner's failure to take steps to protect the record caused her client significant financial harm.

Petitioner contends that in light of the court reporter's duty to preserve trial notes, this conclusion cannot stand. We agree. Government Code section 69955, subdivision (d) provides that no court reporter or court clerk may destroy reporting notes until five years after the notes are taken, and then only upon court order. The notes were prematurely destroyed, contrary to the provisions of the Government Code. Petitioner had no responsibility for this act, and it cannot serve as a factor in aggravation.

The review department further found in aggravation that although petitioner attended the first four hearing sessions in this matter, she did not attend the remaining four sessions. Noting that petitioner was called as a witness and examined by the State Bar, and then cross-examined by her own

counsel, the review department concluded that petitioner's failure to appear deprived the State Bar of the opportunity to further examine petitioner.

Petitioner contends this factor in aggravation is also improper. Petitioner appeared through counsel at all hearing sessions. Although an accused attorney must initially appear and answer the accusation (Bus. & Prof. Code, § 6111), there is no absolute obligation for attorneys to be personally present at all sessions of a disciplinary hearing. (See *Hawk* v. *State Bar* (1988) 45 Cal.3d 589, 597 [247 Cal.Rptr. 599, 754 P.2d 1096].) The State Bar could have issued a subpoena compelling petitioner's presence for the purpose of redirect examination (Bus. & Prof. Code, § 6049, subd. (a)(3)), but did not. Petitioner's brief explains that she was not present because she practiced and lived in Fresno, a considerable distance from the hearing site in San Francisco, and attending further hearing sessions would have caused financial hardship. The review department's findings on this matter are contradictory; although it found petitioner's failure to be present to be an aggravating circumstance, the review department also stated it was "unaware of [petitioner] being uncooperative with the State Bar." We conclude that the review department erred in finding petitioner's absence from some of the hearing sessions was an aggravating circumstance.

### 5.  *Appropriate Discipline*

We accord great weight to the disciplinary recommendation of the review department. (*Hartford* v. *State Bar* (1990) 50 Cal.3d 1139, 1154 [270 Cal.Rptr. 12, 791 P.2d 598].) Petitioner bears the burden of demonstrating that the recommended discipline is erroneous or unlawful. (*In re Abbott* (1977) 19 Cal.3d 249, 253 [137 Cal.Rptr. 195, 561 P.2d 285].) But we exercise our independent judgment in deciding appropriate discipline (*Howard* v. *State Bar* (1990) 51 Cal.3d 215, 220 [270 Cal.Rptr. 856, 793 P.2d 62]), considering all relevant aggravating and mitigating circumstances (*Waysman* v. *State Bar* (1986) 41 Cal.3d 452, 457 [224 Cal.Rptr. 101, 714 P.2d 1239]).

Significant harm to a client is an accepted factor in aggravation. (Rules Proc. of State Bar, div. V, Stds. for Atty. Sanctions for Prof. Misconduct, std. 1.2(b)(iv).) The review department found that petitioner's misconduct significantly harmed McKnight both financially and emotionally. The finding of financial harm was based on the destruction of the reporter's notes. Yet, as we have seen, the destruction of the reporter's notes, which resulted in the settlement of McKnight's suit against Commercial Union for less than might otherwise have been realized, cannot be attributed to petitioner. Moreover, although McKnight's efforts to communicate with peti-

tioner after trial were no doubt frustrating, the record does not show that McKnight suffered legally cognizable emotional harm as a consequence of petitioner's failure to adequately communicate. No evidence was presented, for example, that McKnight sought therapy or counseling of any sort, or experienced any unusual symptoms of stress.

The existence of a prior record of discipline is a factor in aggravation. (Rules Proc. of State Bar, div. V, Stds. for Atty. Sanctions for Prof. Misconduct, stds. 1.2(b)(i), 1.7.) Petitioner has a prior record of discipline; in July 1990, this court suspended her for 90 days for misconduct in a matter arising from her failure to perfect a mechanic's lien. The misconduct in this case was contemporaneous with the misconduct for which petitioner was earlier disciplined. In imposing the earlier discipline, pursuant to a stipulation of the parties we considered as a factor in aggravation the State Bar Court's decision to impose discipline in this case. As the State Bar's counsel acknowledged at oral argument, for this reason it would be inappropriate to consider the earlier discipline as a factor in aggravation in this proceeding. A contrary determination would result in the anomaly that petitioner would suffer the enhancement for two prior incidents of discipline when only one incident could be prior in time to the other.

In mitigation, the review department found that petitioner "is known to be among the few attorneys in her community who regularly are available to represent minorities, women and less favored members of society." In addition, the record in petitioner's prior disciplinary matter shows that petitioner has a substantial record of pro bono activities and community service. We have previously held that service to the community is a mitigating factor that is entitled to "considerable weight." (*Schneider* v. *State Bar* (1987) 43 Cal.3d 784, 799 [239 Cal.Rptr. 111, 739 P.2d 1279].)

Petitioner's misconduct was not insignificant. All attorneys owe a duty to communicate adequately with their clients and to use reasonable speed in accomplishing the purposes for which they were employed. (*Matthew* v. *State Bar* (1989) 49 Cal.3d 784, 790-791 [263 Cal.Rptr. 660, 781 P.2d 952].) Petitioner's breach of this duty in this case is a cause for discipline including a period of actual suspension. But the review department's recommendation of six months' actual suspension is based in significant part on its erroneous findings that petitioner's conduct was the cause of substantial financial and emotional harm to her client.

Under the circumstances, we conclude that the purposes of attorney discipline would be served by imposing the discipline recommended by the State Bar, with the exception that the period of actual suspension be 60 days instead of 6 months. This discipline is proportionate to the misconduct and

consistent with standard 2.4(b) of the Standards for Attorney Sanctions for Professional Misconduct (Rules Proc. of State Bar, div. V). That standard provides: "Culpability of a member of wilfully failing to perform services in an individual matter or matters not demonstrating a pattern of misconduct or culpability of a member of wilfully failing to communicate with a client shall result in reproval or suspension depending upon the extent of the misconduct and the degree of harm to the client."

DISPOSITION

We order that Cynthia S. Calvert be suspended from the practice of law for three years, that execution of the suspension order be stayed, and that she be placed on probation for one year on all the conditions of probation adopted by the review department at its September 14, 1989, meeting, except that petitioner shall be actually suspended from the practice of law for only the first sixty days of the probationary period. The period of probation shall run concurrently with the probation previously imposed in case No. S015180. The period of actual suspension shall commence upon finality of decision, and shall be consecutive to the period of actual suspension imposed in case No. S015180. Costs are awarded to the State Bar.

This order is effective upon finality of this decision in this court. (See Cal. Rules of Court, rule 953(a).)