[No. D040033. Fourth Dist., Div. One. Oct. 23, 2002.]

In re O. S., a Person Coming Under the Juvenile Court Law.
SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY,
Plaintiff and Respondent, v.
LEE C., Defendant and Appellant.

[No. D040385. Fourth Dist., Div. One. Oct. 23, 2002.]

In re O. S. on Habeas Corpus.

**COUNSEL**

Joseph T. Tavano, under appointment by the Court of Appeal, for Defendant and Appellant and for Petitioner.

John J. Sansone, County Counsel, Susan Strom, Chief Deputy County Counsel, and Gary C. Seiser, Deputy County Counsel, for Plaintiff and Respondent.

Suzanne F. Evans, under appointment by the Court of Appeal, for Minor.

## OPINION

**HUFFMAN, J.**—Lee C. appeals a judgment terminating his parental rights to his son, O. S., under Welfare and Institutions Code section 366.26.[1] He also petitions for a writ of habeas corpus. In his appeal, Lee contends he was denied due process when his parental rights to O. S. were terminated because he did not receive timely notice of the detention, jurisdiction, and disposition hearings. In his petition, he contends he received ineffective assistance of counsel because his counsel did not object to the lack of notice or establish his status as a presumed father. Because we conclude Lee received ineffective assistance of counsel, we grant the relief requested in the writ petition and dismiss the appeal as moot.

### FACTUAL AND PROCEDURAL BACKGROUND

The San Diego County Health and Human Services Agency (the Agency) removed O. S. shortly after his September 2001 birth from the custody of his mother, Pamela S., and filed a section 300 petition on his behalf because Pamela's mental illness and hospitalization in a mental health ward rendered her unable to care for the child. Pamela identified Lee as the alleged father, but did not know his whereabouts.

In late October 2001, the court made a true finding on the petition. In December, the court ordered the Agency to conduct a reasonable search to locate and notify Lee about the proceedings.

In January 2002, the court scheduled a section 366.26 hearing and ordered the Agency to continue searching for Lee. That same month, Lee, who was in the county jail for a probation violation, asked a jail social worker to try to locate Pamela and the baby. The social worker determined O. S. had been placed into protective custody and told Lee an Agency social worker would be contacting him. Five days before his release in late January, Lee was contacted and advised of the section 366.26 hearing.

In February 2002, pursuant to Lee's request, the court appointed an attorney to represent him. Lee telephoned counsel on several occasions, but she did not return any of his calls.

At the May 2002 section 366.26 hearing, another attorney specially appeared on appointed counsel's behalf. She asked the court to continue the hearing and order paternity testing. The court denied those requests, found

---

[1]All statutory references are to the Welfare and Institutions Code unless otherwise specified.

O. S. was adoptable and none of the section 366.26, subdivision (c)(1) exceptions applied, and terminated parental rights.

Lee appealed and petitioned for a writ of habeas corpus. We issued an order to show cause and heard oral argument on the matter. We also issued an order to consolidate the petition and the pending appeal.

DISCUSSION

I

In his petition for a writ of habeas corpus,[2] Lee asserts he was denied effective assistance of counsel because his counsel did not object to his lack of notice and did not attempt to establish he was a presumed father.

A

Preliminarily, the Agency asserts Lee did not have a constitutional right to effective counsel because he never established he was a parent within the meaning of section 317.[3] The Family Code and the Welfare and Institutions Code differentiate between "alleged," "natural," and "presumed" fathers. (*In re Zacharia D.* (1993) 6 Cal.4th 435, 448-449 [24 Cal.Rptr.2d 751, 862 P.2d 751].) Alleged fathers have less rights in dependency proceedings than biological and presumed fathers. (*Ibid.*) An alleged father does not have a current interest in a child because his paternity has not yet been established. (*In re Joseph G.* (2000) 83 Cal.App.4th 712, 715 [99 Cal.Rptr.2d 915].) Therefore, he is not a "parent" within the meaning of section 317.

---

[2]The Agency, citing to *In re Meranda P.* (1997) 56 Cal.App.4th 1143, 1161-1163 [65 Cal.Rptr.2d 913], questions whether a writ of habeas corpus "should be allowed at all." However, the general rule is that an ineffective assistance of counsel claim should be raised by a writ petition. (*People v. Mendoza Tello* (1997) 15 Cal.4th 264, 267 [62 Cal.Rptr.2d 437, 933 P.2d 1134].) Moreover, although *In re Meranda P.* held a writ of habeas corpus is per se barred, it did so in part because the parent there had multiple opportunities to challenge counsel's actions. (*In re Eileen A.* (2000) 84 Cal.App.4th 1248, 1257 [101 Cal.Rptr.2d 548].) Here, however, Lee had no such opportunities. Moreover, if Lee is barred from raising his ineffective assistance of counsel claim here, he has no opportunity to do so, as counsel was appointed after the section 366.26 hearing had been scheduled and no appealable events occurred between the time the court appointed counsel and held the section 366.26 hearing. To bring a claim of ineffective assistance of counsel, Lee needed to introduce documentation outside the record, which he may only do through a writ petition. In these circumstances, a writ petition is appropriate.

[3]Section 317, subdivision (b) provides: "When it appears to the court that a parent or guardian of the child is presently financially unable to afford and cannot for that reason employ counsel, and the child has been placed in out-of-home care, or the petitioning agency is recommending that the child be placed in out-of-home care, the court shall appoint counsel, unless the court finds that the parent or guardian has made a knowing and intelligent waiver of counsel as provided in this section."

However, Lee did not attain presumed or biological father status because his counsel neither spoke with him before the section 366.26 hearing to determine his wishes to be so declared nor took action to change his status. Because he had counsel, he could not petition the court himself to change his parental status; he was dependent upon his counsel to take action on his behalf. (*Casey v. Overhead Door Corp.* (1999) 74 Cal.App.4th 112, 121 [87 Cal.Rptr.2d 603].) Lee may proceed with his writ petition because counsel's nonaction left him in the status of an alleged father.

■ Although a parent's right to counsel in dependency proceedings derives from statute (§ 317), a parent has a constitutional right to counsel at some stages of those proceedings. (*Lassiter v. Department of Social Services* (1981) 452 U.S. 18, 31-34 [101 S.Ct. 2153, 2161-2163, 68 L.Ed.2d 640].) We determine whether a parent has that right on a case-by-case basis and consider the factual circumstances and procedural setting of the case at the time the error is said to have occurred. (*Ibid.*; *In re Meranda P., supra,* 56 Cal.App.4th at p. 1153, fn. 6.)

To determine whether federal constitutional rights are implicated, we examine: (1) the private interests at stake; (2) the government's interest; and (3) the risk that the procedures used will lead to an erroneous decision. (*Lassiter v. Department of Social Services, supra,* 452 U.S. at pp. 31-33 [101 S.Ct. at pp. 2161-2163].) "[A]n indigent parent may in some cases have a due process right to counsel where the termination of parental rights may result." (*In re Kristin H.* (1996) 46 Cal.App.4th 1635, 1659 [54 Cal.Rptr.2d 722].) This is because the parent's interest at the termination of parental rights stage is extremely important; the state shares with the parent an interest in a correct decision; and the risk of an erroneous deprivation of the parent's rights is insupportably high. (*Lassiter v. Department of Social Services, supra,* 452 U.S. at pp. 31-32 [101 S.Ct. at pp. 2161-2162].) ■ Under the facts of this case, he had a constitutional right to effective counsel.

B

■ To establish counsel was ineffective, Lee must demonstrate counsel did not act in a manner expected of reasonably competent attorneys and the error was prejudicial. (*Strickland v. Washington* (1984) 466 U.S. 668, 686 [104 S.Ct. 2052, 2063-2064, 80 L.Ed.2d 674].) We review the matter to determine whether it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error. (*Ibid.*; *People v. Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243].)

## 1.

██ Lee contends appointed counsel was ineffective by not raising the issue of inadequate notice in a timely fashion. To act effectively or competently, an attorney must act diligently, with learning and skill, and have the mental, emotional, and physical ability reasonably necessary to perform such services. (Rules Prof. Conduct, rule 3-110(B).) An attorney must have the learning and skill reasonably necessary to handle a particular matter. (*Ibid.*; Vapnek et al., Cal. Practice Guide: Professional Responsibility (The Rutter Group 2001) ¶ 6:70, p. 6-12.4.) In other words, the attorney must be knowledgeable about the subject area.

In the dependency arena, a reasonably competent attorney knows that notice to an alleged father is critical because it enables him the opportunity to appear and assert a position, which includes establishing his paternal status. (§ 316.2, subd. (b); *In re Joseph G., supra,* 83 Cal.App.4th at p. 715.) An attorney also must know the Agency and the court have a duty to provide notice to parents of all hearings in dependency matters and the court has a duty to ask the mother as soon as possible the identities and addresses of all alleged and presumed fathers. (§§ 302, 316.2, subd. (a).) To act competently, an alleged father's attorney must ensure the Agency and the court performed their respective duties.

Here, O. S.'s file contains no information about what efforts the Agency took to locate Lee, although the Agency's response to the writ petition contains documents showing the Agency made a cursory attempt to locate Lee in December 2001, three months after it had filed the section 300 petition. Thus, the Agency did not fully discharge its duties. However, although counsel allegedly received the file in March, she filed no section 388 petitions on Lee's behalf to raise those issues, which is an act inconsistent with acts taken by a competent attorney.

An alleged father in dependency proceedings is entitled to notice, because notice provides him an opportunity to appear and assert a position and attempt to change his paternity status. (§ 316.2, subd. (b); *In re Joseph G., supra,* 83 Cal.App.4th at p. 715.) Notice affords him a reasonable time to make his appearance. (*In re Emily R.* (2000) 80 Cal.App.4th 1344, 1351 [96 Cal.Rptr.2d 285].) The right to be heard has " 'little reality or worth unless one is informed that the matter is pending and can choose for himself whether to appear or default, acquiesce or contest.' " (*In re Antonio F.* (1978) 78 Cal.App.3d 440, 448 [144 Cal.Rptr. 466], disapproved on other grounds in *In re Laura F.* (1983) 33 Cal.3d 826, 830-831 [191 Cal.Rptr. 464, 662 P.2d 922].) An alleged father is entitled to notice.

The Agency does not address the merits of counsel's competency, but asserts Lee cannot establish prejudice because his motion would have failed as the Agency could not locate him with only his name. ▉ However, to establish prejudice, Lee "need not convince the appellate court that the ineffective assistance merits a reversal in which the trial court is directed to make things the way they would have been had the assistance been effective. . . . Rather, a prima facie showing of prejudicial ineffective assistance is all that is required for the [new] hearing that reversal brings." (*In re Eileen A., supra,* 84 Cal.App.4th at pp. 1259-1260.)

▉ In any event, in dependency proceedings, time is of the essence. (*Jones T. v. Superior Court* (1989) 215 Cal.App.3d 240, 251 [264 Cal.Rptr. 4].) Therefore, to act with due diligence, the Agency must undertake a "thorough, systematic investigation and inquiry conducted in good faith." (*David B. v. Superior Court* (1994) 21 Cal.App.4th 1010, 1016 [26 Cal.Rptr.2d 586].) A social services agency does not act with due diligence when it takes no action to locate an alleged father for two months after being informed of his identity. (*In re Julia U.* (1998) 64 Cal.App.4th 532, 542 [74 Cal.Rptr.2d 920].) Likewise, an agency does not act with due diligence when it knows of the alleged father's employer but does not promptly contact the employer. (*David B. v. Superior Court, supra,* 21 Cal.App.4th at p. 1016.)

Here, there is no evidence the Agency did anything between September and December 2001. Even if it had only Lee's name, it could have performed a parent search. In fact, once the court ordered the Agency to look for him in December 2001, it did a paternity search based on only that information, and apparently located his driver's license number. There is no reason for the Agency not to have done so earlier. Although the Agency asserts it would not have found him with that information, because it did not perform the required search there is no way of knowing what information would have turned up earlier.

Moreover, there is no evidence that the court asked Pamela at the detention or jurisdictional hearings about Lee's location, as required by section 316.2, subdivision (a). Because the court did not ask the necessary questions and the Agency did not try to find Lee, a motion asserting lack of notice would likely have been successful and the court would have ordered a new disposition hearing and arranged for paternity testing.

Further, if Lee was O. S.'s biological father, he could receive services if doing so was in the child's best interests. (§ 361.5, subd. (a).) There is no evidence that Lee would not have received services. Although the Agency infers Lee would not have received services because he was incarcerated for

a probation violation, "[t]here is no 'Go to jail, lose your child' rule in California." (*In re S. D.* (2002) 99 Cal.App.4th 1068, 1077 [121 Cal.Rptr.2d 518].) Even if O. S. had a limited relationship with Lee, it may be in the child's best interests to be with his biological father instead of in foster care. (See, e.g., *In re Adoption of Kelsey S.* (1992) 1 Cal.4th 816, 844 [4 Cal.Rptr.2d 615, 823 P.2d 1216] [the biological connection between father and child is unique].) Here, the evidence showed that after Pamela told Lee she was pregnant with his child, he visited her daily until she disappeared in mid-July 2001, six months pregnant. He was unable to locate her. As soon as Lee determined O. S.'s location, he contacted the social worker in late January 2002 to request visits and visited weekly since late February. During visits, he held the baby, fed him, and talked to him about what he wanted to teach him. Had counsel acted competently, there is a reasonable probability that the outcome would have been different. Lee has established prejudice.

2.

Lee asserts he received ineffective assistance of counsel because she did not seek to have him named as a presumed father. To be declared a presumed father under Family Code section 7611,[4] a man must ask the trier of fact to make such a determination and establish the existence of the foundational facts by a preponderance of the evidence. (*In re Spencer W.* (1996) 48 Cal.App.4th 1647, 1652-1653 [56 Cal.Rptr.2d 524].) Because the court cannot sua sponte make such a declaration, not making such a request denied Lee any reasonable opportunity to establish his case.

Further, in dependency cases, a man's status as a presumed or biological father is critical to whether he retains his rights to his child. Alleged fathers have fewer rights than presumed fathers and are not entitled to custody, reunification services, or visitation. (*In re Zacharia D., supra,* 6 Cal.4th at pp. 448-449, 451; *In re Joseph G., supra,* 83 Cal.App.4th at p. 715.) Contrarily, a presumed father is entitled to services and a biological father may get services if doing so is in the child's best interests. (§ 361.5, subd. (a); *In re Zacharia D., supra,* 6 Cal.4th at p. 451.) An attorney handling a dependency matter should be aware of such issues and take appropriate steps to establish the man's paternal status if possible. Counsel did not take any steps to establish paternal status in a timely manner.

Moreover, counsel never communicated with Lee to learn his desires about paternity. An attorney has a duty to communicate with his or her client. (Bus. & Prof. Code, § 6068, subd. (m); Rules Prof. Conduct, rule

---

[4]The Family Code contains six presumptions that qualify a man for presumed father status. (Fam. Code, § 7611.)

3-500.) An attorney violates that duty when he or she fails to return a client's telephone calls promptly. (*Aronin v. State Bar* (1990) 52 Cal.3d 276, 287 [276 Cal.Rptr. 160, 801 P.2d 403].) Simply stated, "[a]dequate communication with clients is an integral part of competent professional performance as an attorney." (*Calvert v. State Bar* (1991) 54 Cal.3d 765, 782 [1 Cal.Rptr.2d 684, 819 P.2d 424].)

Here, Lee learned in February 2002 that counsel had been appointed to represent him. In the next three months, he called her many times and left several messages. He left a fax number where he could be reached and said he wanted a paternity test. She never returned his telephone calls. She admits Lee telephoned at least three times, left a return fax number, and stated he wanted a paternity test. She further admits she never spoke with him. Instead, she waited to see if he would call again, and if he did, she decided she would speak with him the morning of the hearing. However, she did not even attend the section 366.26 hearing, as another attorney specially appeared on her behalf. Counsel did not act competently because she did not communicate with Lee.

The Agency asserts Lee cannot show prejudice because the record does not demonstrate he could be found a presumed father. However, to show prejudice he need not establish he could do so, because a biological father may get services if doing so is in the child's best interest. (§ 361.5, subd. (a).) Moreover, the court may not terminate the parental rights of an unwed father who promptly comes forward and demonstrates a full commitment to his parental responsibilities absent a showing of his unfitness as a parent. (*Adoption of Kelsey S., supra,* 1 Cal.4th at p. 849.) Absent such a showing, the child's well-being is presumptively best served by continuing the father's parental relationship. (*Ibid.*) Further, such a man may take the child into his home to establish presumed father status. (*In re Zacharia D., supra,* 6 Cal.4th at pp. 449-450.)

Because counsel did not seek blood tests, we do not know whether Lee is O. S.'s biological father. Moreover, because she did not seek to have Lee declared a *Kelsey S.* father, he could not take the child into his home to get presumed father status. Further, the record demonstrates he visited the child's mother every day before she disappeared[5] and when he located O. S., he sought visits and visited weekly, from which a court could find he was a *Kelsey S.* father. Had counsel made a timely request, the court may have allowed Lee to establish himself as a biological or *Kelsey S.* father and receive services.

---

[5]The Agency asserts Lee was not committed to being a parent because Pamela did not know where he was. However, Pamela was "floridly psychotic." Thus, what she "knew" was questionable.

This error is compounded by counsel's failure to bring a motion on the notice issue. This was necessary because once the court set a section 366.26 hearing, regardless of whether Lee was a biological or presumed father, he faced a more difficult burden to seek services by showing changed circumstances. (*In re Zacharia D.*, *supra*, 6 Cal.4th at p. 453.) Moreover, once reunification efforts end, the court looks toward the child's interest in permanence and stability, not the parent's interest in maintaining family ties. (*In re Marilyn H.* (1993) 5 Cal.4th 295, 309 [19 Cal.Rptr.2d 544, 851 P.2d 826].) The proceeding terminating reunification services and setting the section 366.26 hearing is generally the party's last opportunity to litigate the issue of parental fitness or to seek the child's return. (*In re Matthew C.* (1993) 6 Cal.4th 386, 392 [24 Cal.Rptr.2d 765, 862 P.2d 765].) If there is clear and convincing evidence the child will be adopted and a previous determination that reunification services should not be offered, termination of parental rights at the section 366.26 hearing is relatively automatic. (*Cynthia D. v. Superior Court* (1993) 5 Cal.4th 242, 249-250 [19 Cal.Rptr.2d 698, 851 P.2d 1307].) Because counsel did not attempt to establish Lee as a presumed, *Kelsey S.*, or biological father, his ability to gain services at this stage of the proceedings is virtually nonexistent. Lee has been prejudiced by counsel not seeking in a timely fashion to have him declared as a biological, *Kelsey S.*, or presumed father.

The Agency contends the only issue relevant to prejudice is whether competent counsel would have prevented the termination of Lee's parental rights at the section 366.26 hearing. It is not. Counsel was appointed in February 2002, yet did nothing for three months. There were steps that could have been taken in the interim period that would have created a reasonable chance the section 366.26 hearing would have been vacated. Because of counsel's nonaction, Lee was prejudiced. Had she acted properly, Lee could have received a new disposition hearing and the opportunity to establish himself as a biological, *Kelsey S.*, or presumed father. As a result, the judgment and the disposition order must be vacated.

## II

Lee has also filed an appeal in which he asserts he did not receive adequate notice. However, because we have concluded Lee received ineffective assistance of counsel, we need not reach the issues in the appeal and dismiss it as moot. (*People v. Walsh* (1996) 49 Cal.App.4th 1096, 1107 [57 Cal.Rptr.2d 214].)

## DISPOSITION

The petition for habeas corpus is granted. The appeal is dismissed as moot. The trial court is to vacate the judgment terminating Lee's and

Pamela's parental rights to O. S. and the order removing O. S. from Lee's care. The trial court is directed to appoint new counsel for Lee and to hold a new dispositional hearing as to Lee only, at which time Lee should be allowed an opportunity to establish himself as a biological, *Kelsey S.*, or presumed father. The clerk of the court is directed to send a copy of this opinion to the State Bar. (Bus. & Prof. Code, § 6086.7, subd. .(b).)

Kremer, P. J., and Haller, J., concurred.

On November 6, 2002, the opinion was modified to read as printed above.