[Nos. B233918, B235664. Second Dist., Div. Three. Apr. 26, 2012.]

LISA KERNER, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
RICHARD M. WIDOM, Real Party in Interest.

[Nos. B234423, B236927. Second Dist., Div. Three. Apr. 26, 2012.]

STOCKWELL, HARRIS, WIDOM, WOOLVERTON & MUEHL et al.,
Petitioners, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
RICHARD M. WIDOM, Real Party in Interest.

[redacted]

## COUNSEL

Cohon & Pollak, Jeffrey M. Cohon, Henry Nicholls; Sedgwick, Robert F. Helfing and Heather L. McCloskey for Petitioners.

No appearance for Respondent.

Katten Muchin Rosenman, Steve Cochran, Stacey McKee Knight and Melissa S. Glousman for Real Party in Interest.

## OPINION

**CROSKEY, J.**—Stockwell, Harris, Widom, Woolverton & Muehl, a California professional corporation (the Stockwell firm), and three of its members, George Woolverton, Steven Harris and Edward Muehl (collectively, Defendants), are defendants in an action brought by another member of the firm, Richard M. Widom. Widom's complaint arises from the firm's termination of his employment after Lisa Kerner, an attorney employed by the firm who was married to Widom at the time, accused him of domestic violence.

Kerner challenges orders compelling Defendants to produce documents purportedly protected by her attorney-client privilege and compelling her to answer deposition questions purportedly invading her attorney-client privilege. Defendants challenge orders permitting discovery of their financial condition in connection with Widom's claims for punitive damages (Civ. Code, § 3295, subd. (c)) and, based on collateral estoppel, granting a motion in limine to exclude any evidence of purported domestic violence.

After careful consideration of the record in these four consolidated writ proceedings, we conclude that (1) the trial court must conduct further proceedings to determine whether Kerner waived her claims of attorney-client privilege with respect to the production of documents; (2) the trial court erred in finding that Kerner and Woolverton did not have an attorney-client relationship and improperly granted Widom's motion to compel Kerner to answer certain deposition questions; (3) the trial court erred by considering conduct protected by the litigation privilege (Civ. Code, § 47, subd. (b)) in support of its finding that Widom had established a substantial probability of prevailing on a claim for punitive damages; (4) the existence of an attorney-client relationship between Woolverton and Kerner does not establish a basis for privity between them for purposes of collateral estoppel; and (5) the trial court's consideration of evidence that Widom had been found "factually innocent" of criminal charges in ruling on the motion in limine was error.

We therefore will grant in part and deny in part the petition challenging the orders compelling the production of documents and grant the petitions challenging the order compelling Kerner to answer deposition questions, the order permitting discovery of Defendants' financial condition and the order granting the motion in limine.

## FACTUAL AND PROCEDURAL BACKGROUND

### 1. Factual Background

The Stockwell firm is a law firm engaged primarily in workers' compensation defense work. Widom was a member of the Stockwell firm for many years. Kerner also worked as an attorney for the firm. Widom and Kerner married in 2005 and separated in March 2009 after a physical altercation between them. Kerner filed a petition for marital dissolution in March 2009 (*In re Marriage of Kerner and Widom* (Super. Ct. L.A. County, No. BD501681)) and obtained a temporary restraining order against Widom based on allegations of domestic violence.

The Stockwell firm notified Widom on April 22, 2009, that his employment was terminated effective that day based on Kerner's claims against him and other claims of misconduct.

### 2. Complaint and Cross-complaint

Widom filed a complaint against the Stockwell firm, Woolverton, Harris and Muehl in June 2009. He filed a verified second amended complaint against the same defendants in August 2010 alleging that the Stockwell firm had terminated his employment without cause "to avoid paying him the salary, benefits and bonuses he would have earned through his retirement, and the four million dollars in deferred compensation to which he is entitled." He alleges that Defendants initially expressed their support for Widom in his opposition to Kerner's application for a temporary restraining order. He alleges, however, that Defendants later terminated his employment without notice and defamed him.

In his complaint, Widom pleads counts for (1) involuntary dissolution of the Stockwell firm corporation, (2) breach of fiduciary duty, (3) breach of oral contract, (4) breach of implied-in-fact contract, (5) breach of written contract, (6) declaratory relief, (7) reformation of contract, (8) breach of oral contract, (9) promissory estoppel, (10) fraud, (11) negligent misrepresentation, (12) defamation, (13) intentional interference with prospective economic advantage, (14) negligent interference with prospective economic advantage and (15) unfair competition. He seeks compensatory and punitive damages,

restitution and disgorgement, injunctive and declaratory relief, and the dissolution of the Stockwell firm and appointment of a receiver.

The Stockwell firm filed a cross-complaint against Widom and the Law Offices of Richard M. Widom, LLP, in January 2010. It filed a second amended cross-complaint against those same cross-defendants in October 2010 alleging that Widom had diverted the firm's money for his own purposes, induced the firm's attorneys to work for his competing law firm and solicited clients away while he was still a shareholder and director of the Stockwell firm, and had exposed the Stockwell firm to liability "by assaulting and battering Lisa Kerner" and by mistreating another employee. The Stockwell firm alleges counts for (1) breach of fiduciary duty, (2) interference with contract, (3) interference with prospective economic advantage, (4) violation of Labor Code sections 2854 and 2865, (5) accounting and (6) unfair competition.[1]

### 3. Other Proceedings

Widom filed a petition for writ of mandate against the Stockwell firm, Woolverton, Harris and Muehl on August 20, 2009 (*Widom v. Stockwell, Harris, Widom, Woolverton & Muehl* (Super. Ct. L.A. County, No. BS122265)), seeking to compel the firm to allow him to inspect its books and records. The trial court entered a judgment on October 8, 2009, granting the petition. The court found that Widom was not properly removed as a director and shareholder and that he remained a director and shareholder of the firm.[2]

Kerner filed a complaint against Widom on September 14, 2009 (*Kerner v. Widom* (Super. Ct. L.A. County, No. BC421690)), and filed a first amended complaint on September 30, 2009, alleging counts for assault and battery and intentional infliction of emotional distress and seeking money damages. Kerner alleged that Widom had threatened and attacked her during their marriage, culminating in a physical attack on March 1, 2009.[3]

The Los Angeles City Attorney filed a criminal complaint against Widom in November 2009. On February 3, 2010, a jury found him not guilty of spousal abuse, spousal battery, simple assault and simple battery. On Widom's motion, the trial court determined that he was factually innocent of the charges and entered an order declaring him factually innocent on March 18, 2010.

---

[1] We judicially notice the original cross-complaint filed on January 7, 2010, and the second amended cross-complaint filed on October 25, 2010. (Evid. Code, § 452, subd. (d).)

[2] We judicially notice the petition and the judgment. (Evid. Code, § 452, subd. (d).)

[3] We judicially notice the complaint and first amended complaint. (Evid. Code, § 452, subd. (d).)

The trial court in the family law proceeding conducted a hearing over several days on Kerner's application for a permanent restraining order against Widom. The court stated in its oral ruling on January 26, 2010, that Kerner need only prove by a preponderance of the evidence that a single act of domestic violence had occurred. The court stated that Kerner's testimony about the events of March 1, 2009, lacked credibility and that her actions on that date and thereafter were inconsistent with her claim that she feared for her safety. The court also stated that Kerner's description of the events had changed over time and seemed exaggerated. The court found that Kerner had suffered injuries in the course of her altercation with Widom on March 1, 2009, but noted that she had admitted slapping him and previously had described the altercation as a pushing match.

The trial court in the family law proceeding concluded:

"My own finding is that Ms. Kerner is not a credible witness and that her testimony as to these events is not believed by the court. I choose to believe Mr. Widom's version of the facts, which is not to say that there is foolproof evidence that the events occurred in the fashion that he says, but on balance, I find his testimony to be more credible.

"In fact, some of Ms. Kerner's testimony is among the most incredible testimony I have heard in a very brief period on the bench, but in 40-plus years as a trial lawyer, including most specifically her testimony about why she returned to the home because of concern over her cats and stayed there for four days in the face of what she thought was her imminent demise at the hands of Mr. Widom. So I'm going to deny the request for restraining order on that basis."

The trial court in Kerner's civil action for damages against Widom later concluded that the finding by the court in the family law proceeding that Widom did not commit domestic violence on March 1, 2009, was collateral estoppel in the civil action. Therefore, on February 17, 2011, the court in the civil action for damages granted Widom's motion in limine to exclude any evidence in support of Kerner's tort claims. She dismissed her civil action for damages with prejudice on March 1, 2011.

### 4. *Widom's Motion for Net Worth Discovery*

Widom filed a motion in December 2010 for an order permitting discovery of Defendants' financial condition pursuant to Civil Code section 3295, subdivision (c). He argued that there was a substantial probability that he would prevail on his counts for intentional interference with prospective business advantage and defamation and be awarded punitive damages. Defendants opposed the motion. A discovery referee heard the motion on February 7, 2011.

5.ᵗ *Widom's Motion to Compel Production of Documents*

Widom moved on March 3, 2011, to compel the production of documents withheld by Defendants based on the assertion of Kerner's attorney-client privilege, attorney work product protection or physician/psychotherapist-patient privilege. The motion was in the form of a letter to the discovery referee to which a privilege log and a series of redacted e-mails were attached.[4] Widom argued that the privilege assertions were baseless and the redactions were unjustified. He sought an order compelling production of the documents listed in the privilege log.

Widom argued that Defendants' counsel maintained that Kerner and her counsel in the civil action for damages, Jacob George, had previously asserted the claims of privilege and made the redactions in response to requests for production of the same documents in that action and that Defendants' counsel were merely asserting those same claims on Kerner's behalf in this action. He argued that this conflicted with declarations by Kerner and her counsel in the civil action for damages indicating that Defendants' counsel had originally asserted the claims of privilege and made the redactions.

Widom provided a copy of George's declaration filed in the civil action for damages on February 10, 2011, declaring that the documents produced to Widom in that action included "various e-mails received from counsel in the matter of Widom v. Stockwell et al[.], LASC Case no. BC415845." George also declared, "These emails contained redactions made by counsel in the Widom v. Stockwell."

Widom also provided copies of Woolverton's declaration dated February 22, 2011, and Kerner's declaration of the same date, both filed in the civil action for damages. Woolverton declared that the documents produced to Widom in the civil action for damages included "various e-mails that Plaintiff [Kerner] received from our attorneys in the matter of Widom v. Stockwell et al[.], LASC Case no. BC415845. Those emails contain some redactions." Woolverton also declared that the e-mails "were redacted where the subject matter of the e-mails involve the attorney client privilege." He declared further, "Some of the emails redacted on the basis of attorney client privilege reflect confidential communications with our counsel of record in defense of the civil lawsuit brought by Richard Widom in the case of *Widom v.*

---

[4] The motion to compel apparently related to document demands propounded by Widom to Defendants, although this is not clear from the record before this court. The record does not include either the discovery request that Widom was seeking to enforce or any explicit reference to such request.

*Stockwell, Harris*. Those emails contain confidential communications neces-
sary to facilitate our defense in that case. Also, there are email communica-
tions where Plaintiff Lisa Kerner seeks information from Stockwell, Harris
necessary for her representation in her divorce case against Richard Widom."

Kerner similarly declared that the documents produced to Widom in the
civil action for damages included "various e-mails Plaintiff received from the
Defendant's attorneys in the matter of Widom v. Stockwell et al[.], LASC
Case no. BC415845. Those documents contained redactions." She also
declared that the documents "were redacted where the subject matter of the
e-mails were subject to the attorney client privilege." She declared further,
"Some of the material redacted on the basis of attorney client privilege seek
information necessary for my divorce action against my ex husband Richard
Widom."

Kerner's deposition took place on March 9 and 10, 2011. She testified that
she sought legal advice from Woolverton "in all matters that involve any
legal issues in my life" and that she considered him to be her attorney. Her
counsel in the deposition objected to and instructed her not to answer
numerous questions based on the attorney-client privilege.[5]

Defendants opposed the motion to compel the production of documents
and provided revised privilege logs listing documents withheld based on the
asserted privileges. The documents were e-mail messages saved on the
Stockwell firm's computer network. Defendants' counsel McCloskey declared
that Kerner and George, as Kerner's counsel in her civil action for damages,
informed McCloskey that Woolverton had acted as Kerner's counsel and
instructed her to withhold all of Kerner's communications with Woolverton
based on the attorney-client privilege. McCloskey declared that she had told
Kerner and George that Defendants were obligated to produce the documents
unless Kerner moved for a protective order to relieve Defendants of their
obligation to produce the documents.

McCloskey further declared that she agreed to separate all e-mails between
Kerner and Woolverton "and provide them to Jacob George to decide which
documents Kerner asserts are privileged." McCloskey declared: "As in-
structed, I continued to provide Mr. George copies of documents which
*potentially* implicated Ms. Kerner's privileges and requested that he identify
which of those documents could be produced and which of those documents
Mr. George would move to prevent their disclosure. I also provided Jacob
George with logs of the documents withheld so that he could identify to me

---

[5] Jeffrey M. Cohon of Cohon & Pollak, LLP, represented Kerner at the deposition and is
cocounsel for Defendants in this action. Robert F. Helfing and Heather L. McCloskey of
Sedgwick LLP also represent Defendants in this action.

which documents should be produced. *I never received any response to my requests of Mr. George that he identify particular documents among those I provided to him which Kerner claimed implicated the privilege.* I emailed Mr. George on several occasions asking to discuss the documents with him. . . . Since I received no response, I was forced to withhold all of them until hearing further from him." (Italics added.)

McCloskey declared that she had made no decisions as to which documents were privileged, but instead had followed instructions given by Kerner and George with respect to the redactions and awaited instructions from George as to which documents to withhold. Defendants argued in their opposition, "Defendants made no decisions concerning what was to be withheld or redacted and were bound to honor the claims of privilege made by Ms. Kerner because she is an employee of the Stockwell firm." They argued that Kerner's communications with Woolverton were privileged to the extent that they related to her seeking or his providing legal advice. Defendants acknowledged that they did not claim any privilege of their own as to any of the documents.

Defendants also argued: "The declarations submitted by Widom in support of the motion do not say what Widom argues they say. None of the declarations say that defendants directed or made the decisions concerning the redactions or withholding of documents based on Kerner's privileges. Indeed, counsel for defendants has repeatedly and accurately informed Widom's counsel that defendants do not claim any privilege of their own in such documents. . . . As discussed above, it is true that defendants' counsel physically made the redactions, since defendants' counsel had access to the database containing the documents and Kerner's counsel did not. . . . However, none of the decisions as to what documents should be redacted or what portions should be redacted were made by defendants' counsel."

Widom provided further evidence with his reply brief, including excerpts from the deposition of Harris on February 25, 2011, in which Harris testified that as an attorney he had never represented Kerner and that, to his knowledge, neither had Woolverton.

The discovery referee heard the motion to compel production of documents together with two other motions on March 22, 2011.

### 6. *Attack on Kerner*

Kerner reportedly was physically attacked and beaten in her home on or about March 21, 2011. She apparently lost consciousness and was discovered in her home two or three days later and hospitalized. She suffered a subarachnoid hemorrhage and many bruises and abrasions.

7. *Referee's Report on Motion to Compel Production*

The discovery referee prepared a report and recommendations dated March 25, 2011, on the motion to compel production of documents. He stated in the report: "Defendants have provided two privilege logs which they allege were prepared at the direction of Kerner and/or Kerner's counsel. . . . [¶] . . . Defendants are not asserting any privilege on their part or their own and make it clear that they do not have any basis for objecting to the release of the documents which are part of the privilege logs. Defendants' position is that many of the documents sought by Plaintiff are documents which represent communications by Kerner and others which were transmitted as part of Defendants' e-mail system. As employers of Kerner, they are concerned that they are not in a position to release/disclose those documents when Kerner and/or her attorneys are asserting the privilege."

The report stated further: "It should be noted that Jacob George, the attorney who represented Lisa Kerner in her lawsuit against Widom in Judge Robert Hess' courtroom, did not file objections before the dismissal of the case by Kerner and never took the position that he was objecting to their disclosure and took the position that he never identified any document to be included in any privilege log for Kerner and that it was Defendants' counsel in this case that did the privilege log and who included these documents."

The discovery referee concluded that some of the documents identified in the privilege log as protected by the attorney-client privilege or attorney work product protection should be disclosed unless Kerner or the persons identified as her attorneys filed written objections in the trial court "no later than 5 'Court' days following service by Plaintiff's counsel of this Report and Recommendations."[6] He identified those documents that should be disclosed absent timely written objections as "every single one of these documents involving Kerner and any of the named Defendants and/or Defendants' employees."

The report stated further, "As for all of the other documents in the privilege log that explicitly identify communications between Kerner and Defendants and Defendants' attorneys, none of them should be ordered disclosed. As for all the other documents in the privilege log that explicitly identify communications between Kerner and attorneys Peter Hermes and/or Jacob George, none of them should be ordered disclosed. As for all others,

---

[6] The Referee's report stated, "The Referee is ordering Widom's counsel to serve this Report and Recommendations to Kerner and the attorneys that she has identified as her attorneys, that is, Defendant Woolverton himself (who does not acknowledge himself that he acted as Kerner's attorney), to Peter Hermes and Jacob George." Hermes was counsel of record for Kerner in the family law proceeding.

they should all be disclosed unless Kerner and/or her lawyers make written objections to this Recommendation." The report stated with respect to the documents purportedly protected by the physician/psychotherapist privilege that the motion should be granted in part and denied in part.

Widom's counsel served the referee's report on Kerner and the three attorneys identified in the report as counsel for Kerner (George, Woolverton and Hermes), and on Defendants' counsel, by overnight courier on March 25, 2011. According to a later declaration by McCloskey, her firm began representing Kerner and George ceased his representation of Kerner on that same date.[7]

### 8. *Objection to Referee's Report on Motion to Compel Production*

Defendants and Kerner jointly filed an objection to the referee's report on the motion for production of documents on March 30, 2011, stating that they objected to the five-day limitation. They stated that Kerner remained hospitalized and was unable to meaningfully participate in her representation and that the time to file objections should be extended until Kerner was able to do so. They stated further that Defendants' cocounsel Sedgwick LLP also represented Kerner and that the objection was asserted on behalf of both Defendants and Kerner.

The trial court at the final status conference on April 11, 2011, ordered Defendants' counsel to provide Kerner's medical reports.[8] On or about April 14, 2011, Defendants lodged in court, under seal, medical records, photographs and a physician's statement all relating to her recent injuries.[9]

### 9. *Referee's Report on Motion for Net Worth Discovery*

The discovery referee prepared a report and recommendations dated April 4, 2011, on the motion for net worth discovery. He stated that net worth

---

[7] McCloskey declared: "Commencing on March 25, 2011, Sedgwick LLP, counsel for [Defendants] also began representing Kerner in connection with the protection from disclosure of her attorney-client privileged communications. Prior to that time, Kerner had been represented by Jacob George with respect to this issue. As of March 25, 2011, George was no longer Kerner's counsel."

[8] We judicially notice the minute order filed on April 11, 2011, showing that the trial court directed Defendants' counsel to provide Kerner's medical reports. (Evid. Code, § 452, subd. (d).)

[9] Medical reports dated March 23 and 24, 2011, stated that Kerner had suffered an acute subarachnoid hemorrhage, a loss of consciousness and multiple severe bodily injuries. Those reports stated that she was able to respond to questions concerning the attack in her home, that she was "alert, oriented" and "[t]hought processes are tangential but overall tight, able to answer simple questions." A medical report dated March 29, 2011, stated, "basic cognitive skills intact; higher level cognition impaired," and noted deficits in particular cognitive and linguistic areas.

discovery is permitted pursuant to Civil Code section 3295, subdivision (c) only if the court finds a "substantial probability" (*ibid.*), meaning that it is "very likely" or there is a "strong likelihood," that the plaintiff will prevail on a claim for punitive damages.

The discovery referee concluded that it was "very likely" that Widom would prevail on his claim for punitive damages against the Stockwell firm, Woolverton and Harris, but not against Muehl. The discovery referee explained:

"[A]fter weighing the evidence submitted in favor and in opposition to the instant motion, it is very likely that Plaintiff Widom will prevail on his claim for punitive damages. Defendants in this case did not simply believe in good faith that Mr. Widom had a physical altercation with Ms. Kerner on March 1, 2009, which resulted in physical injuries to Ms. Kerner, and terminated his employment as a result of that incident and allegations of sexual harassment by other employees of the firm, they acted with malice to destroy Mr. Widom's reputation by making sure that criminal charges be brought against Mr. Widom and by making disparaging remarks about Mr. Widom to his potential clients. In addition, the evidence presented gives the trier of fact the ability to conclude that Defendants also had a financial interest in terminating Plaintiff's employment with Defendant law firm given the $4 million retirement he was allegedly going to receive when he turned 59 ½. Although the City Attorney did not originally contemplate filing criminal charges against Mr. Widom, Defendants hired private investigators to dig up damaging material with respect to Mr. Widom, persuaded Ms. Kerner to file charges with LAPD and lobbied LAPD and the City Attorney[']s office to make sure that the City Attorney file[d] criminal charges against Mr. Widom.

"Moreover, during the Request for Proposal initiated by Kroger [(apparently, a potential client of both Defendants and Widom)], Defendants, without being prompted to do so, told Kroger representatives about the March 1, 2009 incident with Ms. Kerner and that Mr. Widom will soon be criminally charged. Part of the reason why Kroger decided not to select Mr. Widom's law firm was the concern that he will be occupied with personal litigation matters."

The discovery referee rejected Defendants' argument that their efforts to ensure that Widom was criminally prosecuted were protected by the privilege under Civil Code section 47, subdivision (b). He concluded, however, that even if Defendants' communications with the city attorney and police were privileged, their actions of hiring private investigators were noncommunicative acts that were not protected. The referee's report also stated, "[a]lthough Mr. Widom cannot introduce evidence or transcript of testimony from the

criminal trial, pursuant to <u>Penal Code,</u> § 851.85 he can state that he was found innocent of the criminal charges by the court."

 10. *Objections to Referee's Report on Motion for Net Worth Discovery*

Defendants filed objections to the referee's report on the motion for net worth discovery on April 11, 2011. They argued that the evidence strongly supported the conclusion that Widom beat Kerner on March 1, 2009, and compelled the conclusion that they acted without malice. They also argued that Widom was the primary suspect in the recent attack on Kerner and that this made it unlikely that Widom could prove that he did not beat Kerner two years earlier.

Defendants argued further that their hiring of private investigators did not show malice and was protected by the litigation privilege in any event, and that Penal Code section 851.8, subdivision (i)(1) prohibited Widom from presenting any evidence in this action that the court in his criminal case found him factually innocent.

 11. *Trial Court Rulings on Motion to Compel Production and Motion for Net Worth Discovery*

The trial court in a minute order filed on May 19, 2011, adopted in its entirety the referee's recommendation on the motion to compel production of documents and ordered the documents to be produced within two court days. In the same order, the court also adopted in its entirety the referee's recommendation on the motion for net worth discovery. There was no prior oral argument on Defendants' and Kerner's objections to the referee's report.

Defendants moved for reconsideration of both rulings. They argued with respect to the motion to compel production that Kerner was still incapacitated as a result of the attack of March 21, 2011, and that she therefore had no opportunity to file written objections to justify the assertions of privilege. They argued that Defendants' and Kerner's joint counsel "were not her counsel when determinations were made as to what documents should be withheld on the basis of privilege" and had no opportunity to consult with Kerner concerning the basis for the assertions of privilege and that this was a new fact justifying reconsideration. The trial court denied the motion for reconsideration on June 21, 2011.

Defendants argued with respect to the motion for net worth discovery that the fact that Kroger recently had placed Widom's firm on its panel of law firms to handle workers' compensation cases was a new fact justifying

reconsideration. They argued that because Kroger's failure to retain Widom's firm was the basis for the discovery referee's conclusion that he had suffered an economic loss, his obtaining that business indicated that he suffered no economic loss and that Widom could not establish a substantial probability of prevailing and recovering punitive damages on either claim. The trial court denied the motion for reconsideration on June 21, 2011.

### 12. *Widom's Motion to Compel Deposition Answers and Motion to Compel Kerner's Deposition*

Widom filed a motion on May 9, 2011, to compel Kerner to answer 43 questions presented at her deposition on March 9 and 10, 2011, that her counsel had instructed her not to answer based on the attorney-client privilege. Many of the questions concerned Kerner's communications with Woolverton. Widom argued that those questions pertained to preliminary facts and surrounding circumstances independent from the privileged content of any attorney-client communications. Other questions concerned the contents of documents produced by Defendants in this litigation. Widom argued that any attorney-client privilege as to those documents had been waived and that Kerner therefore should be compelled to answer questions concerning the contents of those documents.

Defendants opposed the motion arguing that to the extent that the motion was based on the absence of an attorney-client relationship with Woolverton, any ruling should be postponed until Kerner was able to meaningfully participate in preparing an opposition. They also argued that the questions called for privileged information rather than mere background facts and that there was no waiver of the privilege. The discovery referee heard the motion on June 20, 2011.

Widom also filed a separate motion on May 31, 2011, to compel Kerner to appear and testify at her deposition. Defendants opposed the motion. The trial court granted the motion on June 16, 2011, ordering Kerner to appear and testify at her deposition to take place on August 23, 2011.[10]

### 13. *Defendants' First Writ Petition Regarding Production of Documents*

Defendants petitioned this court for a writ of mandate or other extraordinary relief on June 23, 2011 (No. B233918), challenging the orders of May 19, 2011, and June 21, 2011, compelling the production of documents. They

---

[10] We judicially notice the motion to compel filed on May 31, 2011, opposition filed on June 9, 2011, reply and sur-reply filed on June 13, 2011, and the minute order filed on June 16, 2011, granting the motion. (Evid. Code, § 452, subd. (d).)

argue that the trial court abused its discretion by ordering the production of documents without determining the merits of the assertions of privilege. Defendants argue that Kerner did not waive the privilege and that she had no opportunity to object to the production because she remained incapacitated since the attack on March 21, 2011. They argue that Kerner should be afforded an opportunity to object to the production after her recovery. They seek a writ of mandate ordering the trial court to vacate the two orders and enter a new order allowing Kerner an opportunity to file objections asserting her attorney-client privilege.

14. *Referee's Report, Defendants' Objections to and Trial Court Ruling on Motion to Compel Deposition Answers*

The discovery referee prepared a report and recommendations dated June 28, 2011, on the motion to compel deposition answers. He rejected Defendants' request to defer ruling until Kerner was able to participate in preparing an opposition to the motion, stating that she had made her position clear in her deposition on March 9 and 10, 2011. He noted that Kerner never at any time before January 2011 asserted that Woolverton had acted as her attorney, and that Woolverton had never asserted that he had an attorney-client relationship with Kerner despite several opportunities to do so and to claim the privilege. The discovery referee stated that Woolverton never claimed the attorney-client privilege "because he clearly knew that he never gave Kerner legal advice," and that Woolverton testified on October 25, 2010, that all he did for Kerner was "to hire a private investigator and to accompany Kerner as a friend to the prosecutor's office." The referee concluded, "Kerner's assertion of the attorney-client relationship with Woolverton is not credible and not supported by the facts in this case." He recommended that the trial court grant the motion to compel deposition answers as to all 43 questions.

Defendants filed objections to the discovery referee's report on the motion to compel deposition answers. They argued that Kerner's failure to assert the existence of an attorney-client relationship before January 2011 was not evidence of the nonexistence of such a relationship and that she had no reason to claim the attorney-client privilege earlier. They also argued that Woolverton's failure to assert the existence of an attorney-client relationship did not indicate that no such relationship existed because he had no reason to assert the privilege and was never questioned as to the existence of an attorney-client relationship with Kerner. They argued that the discovery referee had misconstrued Woolverton's testimony. They argued that Kerner's deposition testimony supported the existence of an attorney-client relationship with Woolverton and that Kerner should be afforded an opportunity to testify as to any additional facts supporting the existence of such a relationship.

Defendants also filed a declaration by Woolverton dated July 5, 2011, stating that Kerner had consulted with him for legal advice relating to Widom on several occasions since August 3, 2009, and that he and Kerner both understood that an attorney-client relationship existed between them. He stated that although he was not Kerner's counsel of record in any proceeding, he had provided her with legal advice in connection with Widom's criminal prosecution, Kerner's seeking of a restraining order against Widom, her civil action against Widom and other matters.

The trial court in a minute order filed on July 6, 2011, adopted in its entirety the referee's recommendation on the motion to compel deposition answers.

15. *Defendants' Second Writ Petition Regarding Net Worth Discovery*

Defendants petitioned this court for a writ of mandate or other extraordinary relief on July 15, 2011 (No. B234423), challenging the order permitting net worth discovery. They argue that in adopting the discovery referee's recommendation, the trial court applied an improper legal standard and considered inadmissible evidence.

Defendants argue that the referee applied an improper legal standard in concluding that it was very likely that Widom could present evidence sufficient to establish his claim for punitive damages, rather than clear and convincing evidence as required. They argue that the evidence strongly supports the conclusion that Widom beat Kerner, that Defendants so believed in good faith, and that they acted without malice in making statements to third parties. They also argue that the evidence of Woolverton's statements made to potential clients does not pertain to Harris and that the evidence does not support the finding of a "substantial probability" of prevailing on a punitive damages claim against Harris.

Defendants argue that the referee considered inadmissible evidence by considering evidence protected by the privilege under Civil Code section 47, subdivision (b) and evidence of the declaration of factual innocence. They argue that their hiring of private investigators was not an act independent from their privileged communications with prosecutors and therefore is also privileged. They also argue that the relevant act is not their hiring of private investigators but the communications made by those private investigators to the police and the city attorney, and that those communications are protected by the privilege. They argue that the referee's conclusion that Widom can testify at trial that the criminal court found him innocent of the criminal charges is contrary to law and that the referee improperly relied on the declaration of factual innocence in concluding that Widom had established a "substantial probability" of prevailing on his claim for punitive damages.

### 16. Palma *Notice on the First Writ Petition*

We filed a notice of our intent to issue a peremptory writ of mandate in the first instance (*Palma* notice [*Palma v. U.S. Industrial Fasteners, Inc.* (1984) 36 Cal.3d 171 [203 Cal.Rptr. 626, 681 P.2d 893]]) on July 19, 2011, relating to Defendants' first writ petition. We stated that there was no indication in the record that Kerner had affirmatively waived her attorney-client privilege and that we intended to issue a peremptory writ of mandate directing the trial court to vacate the order adopting the referee's recommendation on the motion to compel production of documents, grant Defendants' motion for reconsideration of that order, and extend the time for Kerner to file objections to the disclosure of information protected by the attorney-client privilege until the time that she was reasonably able to communicate with counsel and assert her attorney-client privilege. We stayed enforcement of the orders of May 19, 2011, and June 21, 2011, as to compelling the production of documents.

### 17. *Kerner's Declaration in Support of Motion to Reopen Discovery and ex Parte Application to Continue Her Deposition*

Kerner filed a declaration dated July 22, 2011, in the trial court in support of Defendants' motion to reopen discovery. She declared that Widom broke into her home on or about March 21, 2011, stated that he was there to "finish the job" and beat her unconscious. She declared that she believed that she was found two days later and taken to the hospital. She also declared that she had reported the attack to the police. The court denied the motion to reopen discovery on September 9, 2011. The court sustained Widom's evidentiary objections to the Kerner declaration at that time and struck the declaration in its entirety.

Kerner, through her new counsel, Amman Khan of Glaser Weil Fink Jacobs Howard Avchen & Shapiro LLP, filed an ex parte application on August 18, 2011, for an order continuing her deposition for 90 days. Her counsel argued that her recent medical evaluation indicated that for her to submit to a deposition would threaten her recovery and be dangerous to her health. Widom opposed the application. Kerner, through her new counsel, also filed an application to file her medical records under seal. The trial court continued the hearing on the ex parte application first to September 27, 2011, and then to October 3, 2011.[11]

---

[11] We judicially notice Kerner's ex parte application filed on August 18, 2011, Widom's opposition filed on August 18, 2011, Kerner's application to file records under seal filed on September 26, 2011, and the minute orders filed on August 18, 2011, and September 27, 2011. (Evid. Code, § 452, subd. (d).)

### 18. *Order to Show Cause on the Second Writ Petition*

We filed an order to show cause on the second writ petition on August 30, 2011. We also stayed enforcement of the orders of May 19, 2011, and June 21, 2011, as to permitting net worth discovery.

### 19. *Defendants' Third Writ Petition Regarding Deposition Answers*

Defendants petitioned this court for a writ of mandate or other extraordinary relief on September 6, 2011 (No. B235664), challenging the order compelling deposition answers. They argued that Kerner's deposition testimony supported her assertion that she had an attorney-client relationship with Woolverton, and the validity of her assertions of privilege should not have been determined without an opportunity for Kerner to testify in opposition to and participate in opposing the motion to compel deposition answers. Defendants also argued that Woolverton's declaration as to the existence of an attorney-client relationship was uncontroverted and supported the existence of such a relationship.

### 20. *Vacation of* Palma *Notice, Orders to Show Cause, and Consolidation*

We issued an order on September 16, 2011, vacating our prior *Palma* notice with respect to Defendants' first writ petition, and then issued orders to show cause on September 20, 2011, as to the first and third writ petitions. We also consolidated the three proceedings at that time and stayed enforcement of the order compelling deposition answers. We then filed an order on September 30, 2011, staying *all* trial court proceedings.

### 21. *Motion in Limine to Exclude Evidence or Argument That Widom Committed Domestic Violence Against Kerner on March 1, 2009*

Widom had also filed a motion in limine on March 17, 2011, to exclude any evidence or argument that he had committed domestic violence against Kerner on March 1, 2009. He argued that the finding by the family law court that he did not commit domestic violence against Kerner on March 1, 2009, was binding on Defendants in this case under the doctrine of collateral estoppel. He asserted that Woolverton had provided legal advice to Kerner in matters involving Widom and that Kerner also testified that she considered Harris and Muehl to be her attorneys as well. He contended that Kerner and the Stockwell firm thus had a common interest in the family law proceeding, that the interests of both were adequately represented in that proceeding and that the Stockwell firm should have had a reasonable expectation that it

would be bound by the determination in that proceeding. Widom argued that the Stockwell firm therefore was in privity with Kerner for purposes of collateral estoppel.

The trial court heard the motion in limine at the final status conference on September 26, 2011. The court found that the Stockwell firm was in privity with Kerner for purposes of collateral estoppel. The court stated that its finding was based in part on Kerner's assertion of an attorney-client relationship with Woolverton and on the fact that the Stockwell firm hired a private investigator to support Widom's prosecution. It stated that Defendants and Kerner had common interests in the family law proceeding, the civil action and the criminal proceeding, and that if Widom were convicted the Stockwell firm would have obtained the benefit of collateral estoppel against Widom in this action.

The trial court stated that the question whether Widom committed domestic violence against Kerner on March 1, 2009, had been determined on the merits in Widom's favor twice, in the family law proceeding and the criminal proceeding. The court stated with respect to the finding of factual innocence, "the doctrine of collateral estoppel should apply to bar re-litigation of the March 1, 2009, incident where Mr. Widom has been declared factually innocent after a trial by jury and by a judge who reconsiders that based on his own appraisal of the evidence." It stated further that it was appropriate to apply collateral estoppel to "preserve the integrity of the judicial system, promote judicial economy, and protect Mr. Widom from harassment by vexatious litigation of the exact same issue for which he has been declared factually innocent."

The trial court therefore granted the motion in limine, excluding any evidence or argument that Widom committed domestic violence against Kerner on March 1, 2009. The court stated that its ruling was based on both collateral estoppel and Evidence Code section 352.

### 22. Defendants' Fourth Writ Petition Regarding Motion in Limine

Defendants petitioned this court for a writ of mandate or other extraordinary relief on October 28, 2011 (No. B236927), challenging the exclusion of evidence. They asserted that Widom's motion in limine was a disguised summary judgment motion because it effectively adjudicated their truth defense to Widom's defamation count and other counts. They also argued that the existence of an attorney-client relationship between Woolverton and Kerner and the Stockwell firm's hiring of a private investigator to support Widom's prosecution did not establish privity for purposes of collateral estoppel. They argued further that the trial court erroneously considered the

finding of factual innocence in concluding that the application of collateral estoppel was fair and consistent with due process.

We issued an order to show cause on the fourth writ petition on December 2, 2011, and consolidated that proceeding with the three other consolidated writ proceedings.

### 23. *Substitution of Petitioner*

Defendants and Kerner filed a motion for leave to amend the petition challenging the orders compelling the production of documents and the petition challenging the order compelling Kerner to answer deposition questions. They acknowledged that Defendants had no standing to challenge those orders based on Kerner's attorney-client privilege (Evid. Code, § 918) and sought to substitute Kerner in the place of Defendants as the petitioner in those petitions. Widom opposed the motion. We concluded that, the parties having fully briefed the issues raised by the two petitions, Widom would suffer no prejudice from the substitution. We therefore granted the motion and ordered the substitution of Kerner as the sole petitioner in those petitions in the place of Defendants.

## *CONTENTIONS*

Kerner and Defendants challenge the orders (1) compelling the production of documents purportedly protected by Kerner's attorney-client privilege; (2) permitting discovery of Defendants' financial condition; (3) compelling Kerner to answer deposition questions; and (4) excluding any evidence or argument that Widom committed domestic violence against Kerner on March 1, 2009.

Kerner contends (1) the trial court erred by compelling the production of documents as to which she previously had claimed the attorney-client privilege without determining the merits of her privilege claims and without allowing her a meaningful opportunity to object; (2) the evidence in the record supports the existence of an attorney-client relationship between Kerner and Woolverton, and the court's finding to the contrary in granting the motion to compel answers to deposition questions was error; and (3) the court erred by compelling Kerner to answer deposition questions without allowing her a meaningful opportunity to object so as to substantiate her privilege claims.

Defendants contend (1) the court failed to apply the "clear and convincing evidence" standard required by Civil Code section 3294, subdivision (a) in determining that there was a "substantial probability" (*id.*, § 3295, subd. (c))

that Widom would prevail on the merits of his punitive damages claim; (2) in making that determination, the court improperly considered evidence protected by the privilege under Civil Code section 47, subdivision (b) and evidence made inadmissible by Penal Code section 851.8, subdivision (i)(1); (3) the evidence strongly supports the conclusion that they believed in good faith that Widom beat Kerner and that they acted without malice in making statements to third parties; (4) Widom's motion in limine was a disguised summary judgment motion and therefore was procedurally improper; (5) the existence of an attorney-client relationship between Woolverton and Kerner and the Stockwell firm's hiring of a private investigator to support Widom's prosecution do not establish privity for purposes of collateral estoppel; and (6) the court improperly considered the finding of factual innocence in concluding that collateral estoppel applied.

## *DISCUSSION*

1. *The Trial Court Must Conduct Further Proceedings to Determine Whether Kerner Waived her Attorney-client Privilege as to the Production of Documents*

 a. *Standard of Review*

We review a trial court's ruling on a motion to compel discovery for abuse of discretion. (*Costco Wholesale Corp. v. Superior Court* (2009) 47 Cal.4th 725, 733 [101 Cal.Rptr.3d 758, 219 P.3d 736] (*Costco*).) "An abuse of discretion occurs if, in light of the applicable law and considering all of the relevant circumstances, the court's decision exceeds the bounds of reason and results in a miscarriage of justice. [Citations.] This standard of review affords considerable deference to the trial court provided that the court acted in accordance with the governing rules of law. We presume that the court properly applied the law and acted within its discretion unless the appellant affirmatively shows otherwise. [Citations.]" (*Mejia v. City of Los Angeles* (2007) 156 Cal.App.4th 151, 158 [67 Cal.Rptr.3d 228].)

An abuse of discretion also occurs if the court applies an erroneous legal standard or its factual findings are not supported by substantial evidence. (*Costco, supra,* 47 Cal.4th at p. 733; *HLC Properties, Ltd. v. Superior Court* (2005) 35 Cal.4th 54, 60 [24 Cal.Rptr.3d 199, 105 P.3d 560] (*HLC Properties*).) Whether a waiver occurred is a question of fact, which we review under the substantial evidence standard, unless the facts are undisputed and can support only one reasonable conclusion. (*St. Agnes Medical Center v. PacifiCare of California* (2003) 31 Cal.4th 1187, 1196 [8 Cal.Rptr.3d 517, 82 P.3d 727].)

b. *Legal Framework*

██ The attorney-client privilege, codified at Evidence Code section 954, authorizes a client to refuse to disclose, and prevents others from disclosing, confidential communications between a client and his or her attorney. (*Ibid.*) The privilege is absolute and prevents disclosure of the communication regardless of its relevance, necessity or other circumstances peculiar to the case. (*Costco, supra,* 47 Cal.4th at p. 732.)

██ A "client" is defined as "a person who, directly or through an authorized representative, consults a lawyer for the purpose of retaining the lawyer or securing legal service or advice from him in his professional capacity . . . . " (Evid. Code, § 951.)

██ A "confidential communication" between client and lawyer is defined as "information transmitted between a client and his or her lawyer in the course of that relationship and in confidence by a means which, so far as the client is aware, discloses the information to no third persons other than those who are present to further the interest of the client in the consultation or those to whom disclosure is reasonably necessary for the transmission of the information or the accomplishment of the purpose for which the lawyer is consulted, and includes a legal opinion formed and the advice given by the lawyer in the course of that relationship." (Evid. Code, § 952.)

The fundamental purpose of the attorney-client privilege is to protect the confidential relationship between client and attorney so as to promote open discussion regarding legal matters. (*Costco, supra,* 47 Cal.4th at p. 732.) The California Supreme Court has stated: " 'Although exercise of the privilege may occasionally result in the suppression of relevant evidence, the Legislature of this state has determined that these concerns are outweighed by the importance of preserving confidentiality in the attorney-client relationship. As this court has stated: "The privilege is given on grounds of public policy in the belief that the benefits derived therefrom justify the risk that unjust decisions may sometimes result from the suppression of relevant evidence." [Citations.]' [Citation.]" (*Ibid.*)

██ The attorney-client privilege may be claimed only by the holder of the privilege, a person who is authorized by the holder to claim the privilege or the person who was the lawyer at the time of the confidential communication. (Evid. Code, § 954.) As relevant here, the "holder of the privilege" is defined as the client.[12] (Evid. Code, § 953.) The lawyer who received or

---

[12] "Holder of the privilege" is defined as the client, if the client has no guardian or conservator; a guardian or conservator of the client, if the client has a guardian or conservator;

made a privileged communication is obligated to "claim the privilege whenever he is present when the communication is sought to be disclosed and is authorized to claim the privilege" under Evidence Code section 954. (*Id.,* § 955.)

■ A waiver of the attorney-client privilege occurs "if any holder of the privilege, without coercion, has disclosed a significant part of the communication or has consented to disclosure made by anyone. Consent to disclosure is manifested by any statement or other conduct of the holder of the privilege indicating consent to the disclosure, including failure to claim the privilege in any proceeding in which the holder has the legal standing and opportunity to claim the privilege."[13] (Evid. Code, § 912, subd. (a).) Failure to claim the privilege constitutes consent to disclosure and a waiver of the privilege only if the holder, in a proceeding in which he or she has the legal standing and opportunity to claim the privilege, fails to claim the privilege knowing that the disclosure of privileged information is sought. (See *Calvert v. State Bar* (1991) 54 Cal.3d 765, 780 [1 Cal.Rptr.2d 684, 819 P.2d 424] (*Calvert*); *People v. Perry* (1972) 7 Cal.3d 756, 783 [103 Cal.Rptr. 161, 499 P.2d 129], overruled on another point in *People v. Green* (1980) 27 Cal.3d 1, 28 [164 Cal.Rptr. 1, 609 P.2d 468].) If these conditions are satisfied, the holder's failure to assert the privilege through his or her attorney constitutes a waiver if the holder had an opportunity to consult with the attorney. (*Calvert, supra,* at p. 780.)

*Calvert* involved a State Bar disciplinary proceeding against an attorney arising from the attorney's representation of a client. (*Calvert, supra,* 54 Cal.3d at p. 771.) Another attorney who previously had represented the same client testified for the defense at the hearing and was questioned on cross-examination concerning her communication with her former client after her

the personal representative of the client if the client is deceased; or a successor, assign, trustee in dissolution or similar representative of an entity that is no longer in existence. (Evid. Code, § 953.)

[13] The definition of a waiver under Evidence Code section 912, subdivision (a) differs from the ordinary definition of a waiver as the intentional relinquishment of a known right. (See Pickering & Story, *Limitations On California Professional Privileges: Waiver Principles And The Policies They Promote* (1976) 9 U.C. Davis L.Rev. 477, 496 & fn. 98; see also 8 Wigmore, Evidence (McNaughton ed. 1961) § 2327, pp. 635–636 [stating that a waiver of the attorney-client privilege by implication should be determined by reference to not only the holder's implied intention but also fairness and consistency]; 1 McCormick, Evidence (6th ed. 2006) § 93, p. 418.)

California courts also recognize a nonstatutory implied waiver of the attorney-client privilege in some circumstances when the client puts the privileged communication directly at issue in litigation and disclosure is essential to a fair adjudication. (*Southern Cal. Gas Co. v. Public Utilities Com.* (1990) 50 Cal.3d 31, 40–43 [265 Cal.Rptr. 801, 784 P.2d 1373].) Kerner is not a party to the trial court proceedings and did not put any matter at issue here, so this basis for a waiver is inapplicable.

period of representation. After the witness had provided some details as to when the communication occurred, the defendant objected to a question on the purpose of the communication based on the attorney-client privilege. The testifying attorney then consulted with her former client, who was present in the courtroom. The witness proceeded to testify that she was " 'not sure' " whether her prior testimony created an attorney-client conflict or would jeopardize her former client's case. The hearing referee invited a motion to strike all of the witness's testimony. The State Bar so moved, and the referee granted the motion over the defendant's objection. (*Id.* at pp. 778–779.)

The California Supreme Court concluded that the attorney-client privilege was waived and that it was error to strike the witness's testimony. (*Calvert, supra,* 54 Cal.3d at p. 780.) *Calvert* stated: "Evidence Code section 912, subdivision (a) provides that a privilege is waived when a holder of a privilege fails to claim the privilege in a proceeding in which he or she has the standing and opportunity to do so. In this case, those conditions were met and the privilege must be held waived. McKnight [(the client)] was a holder of the privilege; as a witness who was present at the hearing she had standing and opportunity to claim it; she consulted with her attorney when the issue was raised by petitioner; and she evidently failed to instruct Frampton [(the testifying attorney)] to claim the privilege. Frampton, as McKnight's attorney, stated that she was 'not sure' whether her testimony created a conflict or would jeopardize McKnight's case. This equivocal statement by McKnight's attorney after consultation with McKnight amounts to a failure to claim the privilege when the opportunity arose." (*Ibid.*)

*Glade v. Superior Court* (1978) 76 Cal.App.3d 738 [143 Cal.Rptr. 119] (*Glade*) involved an action by clients against their former attorney. The plaintiffs moved to compel the production of the attorney's correspondence with other clients (the MacFarlands) and other documents relating to his representation of the MacFarlands. The defendant attorney opposed the motion, asserting the attorney-client privilege. (*Id.* at pp. 742–743.) The trial court initially denied the motion without prejudice "to afford the MacFarlands an opportunity to appear and present grounds other than those already asserted by defendant for protection of their files."[14] (76 Cal.App.3d at p. 743.) The plaintiffs and the defendant stipulated that the MacFarlands' failure to appear at the hearing or to communicate with the trial court would not constitute a waiver of the attorney-client privilege. (*Id.* at p. 744.) After the MacFarlands failed to appear at the hearing, the court granted the discovery motion. (*Id.* at p. 743.)

---

[14] *Glade, supra,* 76 Cal.App.3d 738, did not state whether the MacFarlands were notified that privileged communications were being sought in the proceeding.

■ *Glade* noted that the defendant attorney had already asserted the attorney-client privilege on his clients' behalf. (*Glade, supra,* 76 Cal.App.3d at pp. 743–744.) *Glade* concluded that the parties' stipulation that the MacFarlands' failure to appear or to communicate with the trial court would not constitute a waiver of the privilege was binding on the trial court and therefore held that there was no waiver of the privilege. (*Id.* at p. 744.) *Glade* stated further that the facts could not support a waiver in any event: "No waiver of the privilege by the MacFarlands is manifested by the record in any case. To find a waiver arising from the MacFarlands' failure to appear at a hearing in an action in which they are not parties and have no interest would place the burden of asserting the attorney-client privilege upon the client. This result would run counter to the rule that the attorney-client privilege is retained, even without express assertion thereof, until the holder voluntarily discloses a substantial part of the privileged communication or otherwise unambiguously manifests his consent for disclosure by others. (See Evid. Code, § 912, subd. (a); [citations].) The MacFarlands' failure to appear at the hearing on plaintiffs' discovery motion or otherwise to communicate with the court cannot be construed as an implied waiver of the privilege under the circumstances presented by the record. [Citation.]" (*Glade, supra,* 76 Cal.App.3d at pp. 744–745.)

■ Evidence Code section 912, subdivision (a) provides that the attorney-client privilege is waived if the holder of the privilege has consented to the disclosure of privileged information by failing to claim the privilege in a proceeding in which he or she has the standing and opportunity to do so, as we have stated. (*Calvert, supra,* 54 Cal.3d at p. 780.) The Legislature has determined that the privilege is waived if these conditions are satisfied. (*Ibid.*) This is so even if the holder of the privilege is not a party to the proceedings in which disclosure of the privileged communication is sought, as was the case in *Calvert.* Contrary to the language in *Glade, supra,* 76 Cal.App.3d at page 744, quoted in the preceding paragraph, we believe that the waiver rule is not limited to circumstances where the holder of the privilege "unambiguously manifests his consent" (*ibid.*) to the disclosure. Instead, as in *Calvert,* even an "equivocal statement" by the holder's attorney may support a finding of waiver if the holder, through his or her attorney, fails to claim the privilege knowing that privileged information is sought and the holder is provided an opportunity to object. (*Calvert, supra,* 54 Cal.3d at p. 780.)

 c. *The Trial Court Must Determine Whether Kerner Waived or Preserved Her Attorney-client Privilege*

Defendants argued in opposition to the motion to compel production of documents that the e-mails were properly withheld to the extent that they contained confidential communications between Kerner as client and

Woolverton as her attorney. Defendants argued that the documents in the revised privilege logs provided with the opposition were withheld at the instruction of Kerner and her counsel, George. The declaration by Defendants' counsel, McCloskey, explained that Kerner and George had instructed her to withhold all communications between Kerner and Woolverton as potentially privileged, and that she had asked Kerner and George to identify the particular privileged documents and was still awaiting a response.

The discovery referee noted that Woolverton himself had never stated that he had acted as Kerner's attorney. Although Defendants argued in their opposition that the e-mails, or some of them, contained confidential communications between Kerner as client and Woolverton as her attorney, Woolverton's declaration filed in Kerner's civil action for damages never specifically mentioned such an attorney-client relationship. Instead, Woolverton declared in that action more generally that some of the e-mails contained confidential communications between Defendants and Defendants' counsel in this action and that other e-mails involved "communications where Plaintiff Lisa Kerner seeks information from Stockwell, Harris necessary for her representation in her divorce case against Richard Widom."

The question now is whether Kerner waived the privilege by failing to timely claim the privilege in response to the referee's report. The discovery referee was unaware of the March 21, 2011, physical attack on Kerner and did not consider it in his report, which included the recommendation that an order be issued requiring the disclosure of certain documents unless Kerner or her attorney filed written objections within five days. Widom served the discovery referee's report on Kerner and the persons identified as her attorneys, Woolverton, George and Hermes, and on Defendants' counsel, by overnight courier on March 25, 2011. Defendants' counsel, Sedgwick LLP commenced its representation of Kerner in connection with this discovery dispute on that same date, replacing George as Kerner's counsel. McCloskey declared that her firm "began representing Kerner in connection with the protection from disclosure of her attorney-client privileged communications" on March 25, 2011. Kerner, through her new counsel, filed an objection on March 30, 2011, stating that Kerner remained hospitalized and was unable to meaningfully participate in her representation and that the time to file objections should be extended until she was able to meaningfully participate. Neither Kerner's new counsel nor the persons previously identified as her attorneys asserted the privilege on her behalf at that time. Defendants' and Kerner's joint counsel lodged Kerner's medical records under seal on or about April 14, 2011.

The trial court adopted the discovery referee's recommendation on May 19, 2011, without oral argument, and ordered the documents to be produced

within two court days. Apart from adopting the referee's recommendation, the court made no express findings at that time and did not comment on the objection filed by Defendants and Kerner. In particular, the court did not state whether it found that, despite her physical condition after the attack, Kerner had an opportunity to consult with counsel concerning assertion of her attorney-client privilege or whether five court days was sufficient time for her to do so. The court did not state whether it found that, despite her physical condition, Kerner had an opportunity to claim the privilege in this action through her counsel but failed to do so. In denying Defendants' motion for reconsideration of the ruling on June 21, 2011, the court stated that it had considered the objection but again did not comment on these matters.

In light of the unusual circumstances of this case, we believe that it is imperative that the trial court consider and expressly rule on Defendants' and Kerner's objection to the referee's report and, specifically, the matters we have identified. Accordingly, we will grant in part and deny in part Kerner's petition challenging the orders compelling the production of documents. The trial court must conduct further proceedings, including an evidentiary hearing, to determine whether Kerner waived her attorney-client privilege with respect to the requested documents pursuant to Evidence Code section 912, subdivision (a). The court must make explicit findings as to whether, despite her physical condition after the attack, Kerner had an opportunity to consult with counsel concerning assertion of her attorney-client privilege and whether she had an opportunity to claim the privilege in this action through her counsel but failed to do so.[15]

## 2. The Trial Court Erred in Concluding That Kerner and Woolverton Had No Attorney-client Relationship

### a. Legal Framework and Standard of Review

The attorney-client privilege protects confidential communications between a client and his or her attorney made in the course of an attorney-client relationship, as we have stated. (Evid. Code, §§ 952, 954.) A "client" for purposes of the attorney-client privilege is "a person who, directly or through an authorized representative, consults a lawyer for the purpose of retaining the lawyer or securing legal service or advice from him in his professional capacity . . . . " (*Id.*, § 951.)

█ An attorney-client relationship exists for purposes of the privilege whenever a person consults an attorney for the purpose of obtaining the

---

[15] We will deny Kerner's petition to the extent that she seeks an order allowing her to file objections asserting her attorney-client privilege. Whether she may file such objections will depend on the trial court's ruling on remand on the waiver issue.

attorney's legal service or advice. (*People v. Gionis* (1995) 9 Cal.4th 1196, 1208, 1210 [40 Cal.Rptr.2d 456, 892 P.2d 1199].) This is so even if the attorney is never hired.[16] (*Gionis*, at p. 1208; *People v. Canfield* (1974) 12 Cal.3d 699, 705 [117 Cal.Rptr. 81, 527 P.2d 633].) As is true with respect to the attorney-client relationship in other contexts, no formal agreement or compensation is necessary to create an attorney-client relationship for purposes of the privilege. (Cf. *Lister v. State Bar* (1990) 51 Cal.3d 1117, 1126 [275 Cal.Rptr. 802, 800 P.2d 1232].) In contrast, no attorney-client relationship arises for purposes of the privilege if a person consults an attorney for nonlegal services or advice in the attorney's capacity as a friend rather than in his or her professional capacity as an attorney. (*People v. Gionis, supra*, 9 Cal.4th at p. 1212.)

The question whether the attorney-client privilege applies to a particular communication is a question of fact if the evidence is in conflict. (*HLC Properties, supra*, 35 Cal.4th at p. 60; *People v. Gionis, supra*, 9 Cal.4th at p. 1208.) In particular, whether an attorney was consulted in his or her professional capacity as an attorney, creating an attorney-client relationship, is a question of fact. (*People v. Gionis, supra*, at pp. 1208, 1212.) We can disturb the trial court's factual finding in this regard only if there is no substantial evidence to support it. (*Ibid.*)

### b. *The Evidence Compels the Conclusion That Kerner and Woolverton Had an Attorney-client Relationship*

Kerner testified in her deposition that she sought legal advice from Woolverton "in all matters that involve any legal issues in my life." She testified that Woolverton provided her with legal advice relating to various litigation matters, including her civil action for damages against Widom, her family law proceeding and the criminal case against Widom. She also testified that she considered Woolverton to be one of her lawyers in connection with her civil action for damages against Widom and her family law proceeding. The attorney representing Kerner in the deposition instructed her not to answer numerous questions as to whether Woolverton had advised her concerning actions that she took in connection with the various litigation matters.

The discovery referee stated in his report dated June 28, 2011, that Kerner never at any time before January 2011 stated that Woolverton was her lawyer or that she turned to him for legal advice. The referee noted that Woolverton

---

[16] *People v. Gionis, supra*, 9 Cal.4th at page 1208 explained: "The rationale for this rule is compelling: 'no person could ever safely consult an attorney for the first time with a view to his employment if the privilege depended on the chance of whether the attorney after hearing his statement of the facts decided to accept the employment or decline it.' [Citation.]"

was called as a witness in some of the proceedings and never asserted the attorney-client privilege. The referee stated that if Woolverton had acted as Kerner's attorney he was obligated to assert the privilege (see Evid. Code, § 955) and that his failure to do so indicated that "he clearly knew that he never gave Kerner legal advice." The referee stated that communications with an attorney who was not acting in his or her professional capacity are not privileged, citing *People v. Gionis, supra,* 9 Cal.4th 1196, 1206, and that a person's unilateral, subjective belief that an attorney-client relationship exists, standing alone, cannot create such a relationship, citing *Zenith Ins. Co. v. O'Connor* (2007) 148 Cal.App.4th 998 [55 Cal.Rptr.3d 911]. The referee stated further that Woolverton had never asserted in this litigation that he was Kerner's attorney and that he testified on October 25, 2010, "that all he did vis-à-vis Kerner is to hire a private investigator and to accompany Kerner as a friend to the prosecutor's offices."

The discovery referee concluded that Kerner's assertion of an attorney-client relationship with Woolverton was "not credible and not supported by the facts in this case" and that "[t]he only reasonable conclusion" was that Kerner was attempting to avoid providing testimony that could support Widom's claims. The referee recommended that the trial court grant Widom's motion in its entirety and that Kerner be compelled to answer the 43 questions. The trial court adopted the referee's recommendation in its entirety on July 6, 2011, despite Woolverton's declaration filed on July 5, 2011.

Woolverton stated in that declaration: "On August 3, 2009, Lisa Kerner began consulting with me for legal advice relating to the various legal matters in which she was involved with Richard Widom. . . . I advised her on legal issues, assisted her in making legal decisions and, in connection with some of these matters, interfaced with her other legal counsel. . . . I continue to serve as her legal counsel in all matters between Kerner and Widom, including the recent attack on her and the various legal needs that have arisen as a result thereof." He declared that when he testified in his deposition that all he did to help Kerner was to hire a private investigator, he understood the question to be limited to what efforts he had made to assist Kerner in causing Widom to be prosecuted. Woolverton declared that his testimony in response to that question did not reflect the advice that he had given to Kerner in connection with Widom's criminal prosecution or other legal matters.

Kerner's deposition testimony and Woolverton's declaration were consistent, plausible and not inherently unbelievable. Both stated that Kerner had sought and received legal advice from Woolverton in connection with various legal

matters involving Widom. This evidence was uncontroverted.[17] The discovery referee did not expressly or impliedly find that Kerner had waived the attorney-client privilege by failing to claim it earlier. Instead, the referee concluded that Kerner's and Woolverton's prior failure to state that Woolverton had acted as her attorney and failure to invoke the privilege indicated that they did not believe that any attorney-client relationship existed at all and that Kerner's testimony that she had sought and Woolverton had provided her legal advice therefore lacked credibility. The trial court adopted that conclusion and impliedly concluded that Woolverton's declaration lacked credibility as well. We conclude to the contrary. Kerner and Woolverton were never directly questioned about the existence of an attorney-client relationship between them, previously had no compelling reason to disclose the existence of such a relationship and did not contradict their prior testimony. The evidence in the record cannot support a reasonable inference that Kerner's deposition testimony and Woolverton's declaration were false. Instead, the uncontroverted evidence compels the conclusion that there was an attorney-client relationship between Kerner and Woolverton.

We therefore will grant Kerner's petition challenging the order compelling her to answer deposition questions and will direct the trial court to vacate that order and reconsider the motion in light of the views expressed in this opinion.

### 3. *The Granting of the Motion for Net Worth Discovery Was Error*

#### a. *Civil Code Section 3295, Subdivision (c)*

█ Punitive damages may be awarded in an action for breach of an obligation not arising from contract if the plaintiff establishes by clear and convincing evidence that the defendant was guilty of oppression, fraud or malice. (Civ. Code, § 3294, subd. (a).) Pretrial discovery of a defendant's financial condition in connection with a claim for punitive damages is prohibited absent a court order permitting such discovery. Civil Code section 3295, subdivision (c) states: "No pretrial discovery by the plaintiff shall be permitted with respect to the evidence referred to in paragraphs (1) and (2) of subdivision (a) unless the court enters an order permitting such discovery pursuant to this subdivision. . . . Upon motion by the plaintiff supported by appropriate affidavits and after a hearing, if the court deems a hearing to be necessary, the court may at any time enter an order permitting the discovery otherwise prohibited by this subdivision if the court finds, on the basis of the supporting and opposing affidavits presented, that the plaintiff has established

---

[17] Harris testified that he had no knowledge that Woolverton had ever represented Kerner, not that he knew that Kerner had never sought legal advice from Woolverton.

that there is a substantial probability that the plaintiff will prevail on the claim pursuant to Section 3294."[18]

The purpose of this requirement is to protect defendants' financial privacy and prevent defendants from being pressured into settling nonmeritorious cases in order to avoid disclosure of their financial information. (*Jabro v. Superior Court* (2002) 95 Cal.App.4th 754, 757 [115 Cal.Rptr.2d 843] (*Jabro*).)

■ A trial court considering a motion to permit discovery of a defendant's financial condition must weigh the evidence submitted in support of and in opposition to the motion and determine whether the plaintiff has established a "substantial probability" (Civ. Code, § 3295, subd. (c)) of prevailing on a claim for punitive damages. (*Jabro, supra*, 95 Cal.App.4th at p. 758.) In this context, a "substantial probability" of prevailing on a claim for punitive damages means that it is "very likely" that the plaintiff will prevail on such a claim or there is " 'a strong likelihood' " that the plaintiff will prevail on such a claim. (*Ibid.*)

> b. *Civil Code Section 47, Subdivision (b) Precludes the Consideration of Defendants' Efforts to Encourage the City Attorney to Prosecute Widom*

■ The privilege established by Civil Code section 47, subdivision (b) precludes tort liability arising from certain statements. The privilege applies to any communication made "[i]n any (1) legislative proceeding, (2) judicial proceeding, (3) in any other official proceeding authorized by law, or (4) in the initiation or course of any other proceeding authorized by law and reviewable pursuant to [statutes governing writs of mandate]" (*ibid.*), with certain exceptions that do not apply here. The privilege is absolute and applies regardless of malice. (*Action Apartment Assn., Inc. v. City of Santa Monica* (2007) 41 Cal.4th 1232, 1241 [63 Cal.Rptr.3d 398, 163 P.3d 89] (*Action Apartment*).) The privilege is interpreted broadly in order to further its principal purpose of affording litigants and witnesses the utmost freedom of access to the courts and to other official proceedings without fear of harassment in derivative tort actions. (*Id.* at p. 1241; *Hagberg v. California Federal Bank* (2004) 32 Cal.4th 350, 360–361 [7 Cal.Rptr.3d 803, 81 P.3d 244] (*Hagberg*).)

■ As applicable to communications made in a "judicial proceeding" (Civ. Code, § 47, subd. (b)), the privilege applies not only to statements made

---

[18] Paragraphs (1) and (2) of Civil Code section 3295, subdivision (a) refer to evidence of profits gained through wrongful conduct and evidence of the defendant's financial condition.

in the courtroom but also to prelitigation communications made in preparation for anticipated litigation. (*Action Apartment, supra*, 41 Cal.4th at pp. 1241, 1251; *Hagberg, supra*, 32 Cal.4th at p. 361.) Similarly, communications made to governmental agencies requesting that the agencies investigate or remedy wrongdoing are absolutely privileged as communications made "in any other official proceeding authorized by law" (Civ. Code, § 47, subd. (b)). (*Hagberg, supra*, at pp. 362–364.)

■■■ "[W]hen a citizen contacts law enforcement personnel to report suspected criminal activity and to instigate law enforcement personnel to respond, the communication also enjoys an unqualified privilege under [Civil Code] section 47[, subd. ](b)." (*Hagberg, supra*, 32 Cal.4th at p. 364.) "[T]he broad application of the privilege serves the important public interest of securing open channels of communication between citizens and law enforcement personnel and other public officials charged with investigating and remedying wrongdoing." (*Id.* at p. 372.)

■■■ The privilege established by Civil Code section 47, subdivision (b) applies not only to oral and written statements, but also to other communicative conduct. (*Action Apartment, supra*, 41 Cal.4th at pp. 1248–1249.) Whether conduct is considered communicative or noncommunicative depends on the gravamen of the cause of action. (*Ibid.*; *Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1058 [39 Cal.Rptr.3d 516, 128 P.3d 713].) The question is whether the conduct allegedly resulting in the plaintiff's injury was essentially communicative in nature. (*Action Apartment, supra*, 41 Cal.4th at pp. 1248–1249; *Rusheen, supra*, 37 Cal.4th at p. 1058.) If so, the privilege also "extends to noncommunicative acts that are necessarily related to the communicative conduct." (*Rusheen, supra*, at p. 1065.) The privilege does not apply, however, if the gravamen of the action is noncommunicative conduct independent of any privileged communication. (*Ibid.*)

The discovery referee, in a recommendation adopted by the trial court, concluded that Widom had established a substantial probability of prevailing on his claim for punitive damages. That conclusion was based in part on evidence of Defendants' efforts to encourage the city attorney to prosecute Widom for domestic violence. Those efforts included hiring private investigators to investigate Widom, convey information to the police and city attorney, and encourage the authorities to prosecute Widom. The private investigators' communications with the authorities conveying information for the purpose of encouraging the prosecution of Widom were protected by the "official proceeding" privilege. (*Hagberg, supra*, 32 Cal.4th at pp. 362–364.)

Defendants' conduct of hiring private investigators to encourage the city attorney to prosecute Widom was necessarily related to the communications

by the private investigators to the authorities that followed as a result of that hiring. We therefore conclude that the hiring of private investigators was protected by the privilege regardless of whether it constituted communicative or noncommunicative conduct. The trial court thus erred by considering evidence of Defendants' hiring of private investigators in support of its finding of a substantial probability that Widom would prevail on his claim for punitive damages.

We therefore will grant Defendants' petition challenging the order permitting net worth discovery and will direct the trial court to reconsider the motion in light of the views expressed in this opinion.

c. *Any Evidence of the Finding of Factual Innocence Is Inadmissible*

A defendant who has been arrested and prosecuted but not convicted of any crime may petition the court for a finding that he or she is factually innocent of the charges for which the arrest was made. (Pen. Code, § 851.8, subd. (c).) A finding of factual innocence is proper only if "the court finds that no reasonable cause exists to believe that the arrestee committed the offense for which the arrest was made."[19] (Pen. Code, § 851.8, subd. (b).) If the court finds the defendant to be factually innocent of the charges, it must order any law enforcement agency having jurisdiction over the offense or participating in the arrest and the Department of Justice to seal their records of the arrest and destroy such records after three years from the date of the arrest. (*Id.*, subds. (b) & (c).)

A court making a finding of factual innocence must issue a written declaration to the defendant stating the court's determination that the defendant is factually innocent of the charges for which he or she was arrested and that the defendant is thereby exonerated. (Pen. Code, § 851.8, subd. (f).) Subdivision (f) further states, "Thereafter, the arrest shall be deemed not to have occurred and the person may answer accordingly any question relating to its occurrence."[20] Subdivision (i)(1) of Penal Code section 851.8 states,

---

[19] " ' " 'Reasonable cause' " ' is a well-established legal standard, ' "defined as that state of facts as would lead a man of ordinary care and prudence to believe and conscientiously entertain an honest and strong suspicion that the person is guilty of a crime." ' [Citations.] To be entitled to relief under section 851.8, '[t]he arrestee [or defendant] thus must establish that facts exist which would lead no person of ordinary care and prudence to believe or conscientiously entertain any honest and strong suspicion that the person arrested [or acquitted] is guilty of the crimes charged. [Citation.]' [Citation.]" (*People v. Adair* (2003) 29 Cal.4th 895, 904 [129 Cal.Rptr.2d 799, 62 P.3d 45].)

[20] Penal Code section 851.85 similarly states: "Whenever a person is acquitted of a charge and it appears to the judge presiding at the trial wherein such acquittal occurred that the defendant was factually innocent of the charge, the judge may order that the records in the case

"Any finding that an arrestee is factually innocent pursuant to subdivision (a), (b), (c), (d), or (e) shall not be admissible as evidence in any action."

 "Our fundamental task in construing a statute is to ascertain the legislative intent so as to effectuate the purpose of the law. (*Hassan v. Mercy American River Hospital* (2003) 31 Cal.4th 709, 715 [3 Cal.Rptr.3d 623, 74 P.3d 726].) Because the statutory language ordinarily is the most reliable indicator of legislative intent, we begin by examining the words of the statute. (*Ibid.*) We give the words of the statute their ordinary and usual meaning and construe them in the context of the statute as a whole and the entire scheme of law of which it is a part. (*State Farm Mutual Automobile Ins. Co. v. Garamendi* (2004) 32 Cal.4th 1029, 1043 [12 Cal.Rptr.3d 343, 88 P.3d 71].) If the language is clear and a literal construction would not result in absurd consequences that the Legislature did not intend, we presume that the Legislature meant what it said and the plain meaning governs. (*Coalition of Concerned Communities, Inc. v. City of Los Angeles* (2004) 34 Cal.4th 733, 737 [21 Cal.Rptr.3d 676, 101 P.3d 563].) If the language is ambiguous, we may consider a variety of extrinsic aids, including the purpose of the statute, legislative history, and public policy. (*Ibid.*)" (*Frontier Oil Corp. v. RLI Ins. Co.* (2007) 153 Cal.App.4th 1436, 1448–1449 [63 Cal.Rptr.3d 816].)

 The plain meaning of the statutory language in Penal Code section 851.8, subdivision (i)(1) is that a finding of factual innocence under the statute cannot be considered as evidence in any action for any purpose either by the court or the jury. Thus, a defendant who was arrested and prosecuted but not convicted and later was found by the court to be factually innocent of particular charges may state in response to a question that he or she was never arrested on those charges. (*Id.*, subd. (f).) The arrest is deemed not to have occurred, and the defendant may state that he or she was never arrested, so there is no need to admit evidence of the finding of factual innocence in order to exonerate the defendant in the eyes of the court or jury in a later action.

 Penal Code section 851.85 is not inconsistent with our construction of Penal Code section 851.8, subdivision (i)(1). Section 851.85 requires a court making a finding of factual innocence to "inform the defendant that he may thereafter state that he was not arrested for such charge and that he was found innocent of such charge by the court." Section 851.85 does not expressly state that the defendant may testify in a later proceeding that he or she was found innocent of the charge.

---

be sealed, including any record of arrest or detention, upon the written or oral motion of any party in the case or the court, and with notice to all parties to the case. If such an order is made, the court shall give to the defendant a copy of such order and inform the defendant that he may thereafter state that he was not arrested for such charge and that he was found innocent of such charge by the court."

■ We must construe two statutes dealing with the same subject in a way that harmonizes them, avoids conflict and avoids rendering any part of either statute surplusage, if reasonably possible. (*Broughton v. Cigna Healthplans* (1999) 21 Cal.4th 1066, 1086 [90 Cal.Rptr.2d 334, 988 P.2d 67]; *DeVita v. County of Napa* (1995) 9 Cal.4th 763, 778–779 [38 Cal.Rptr.2d 699, 889 P.2d 1019].) "If we can reasonably harmonize '[t]wo statutes dealing with the same subject,' then we must give 'concurrent effect' to both . . . . " (*Garcia v. McCutchen* (1997) 16 Cal.4th 469, 478 [66 Cal.Rptr.2d 319, 940 P.2d 906].) ■ Accordingly, we construe Penal Code sections 851.8, subdivision (i)(1) and 851.85 together to mean that a defendant who is found factually innocent of a charge may state that a court found him innocent of the charge, but such a statement is not admissible as evidence in any action, and no other evidence of a finding of factual innocence is admissible in any action.

The discovery referee stated in his report on the motion for net worth discovery that Widom could not introduce evidence from the criminal trial, but that Widom could "state that he was found innocent of the criminal charges by the court," apparently referring to such a statement at trial in this action. Neither the discovery referee nor the trial court in adopting the referee's report expressly considered the finding of factual innocence in concluding that Widom had established a substantial probability of prevailing on his claim for punitive damages. Still, the above quoted language in the referee's report is cause for concern, and the issue is likely to arise again in further proceedings, so we will address it.

■ We conclude pursuant to Penal Code section 851.8, subdivision (i)(1) that Widom cannot testify at trial in this action that he was found factually innocent by the criminal court and that neither the trial court nor the jury may consider any evidence of the finding of factual innocence for any purpose, including any ruling on the motion for net worth discovery.

### 4. *The Granting of the Motion in Limine Was Error*

#### a. *Principles of Collateral Estoppel*

■ Collateral estoppel, or issue preclusion, precludes the relitigation of issues argued and decided in prior proceedings. (*Hernandez v. City of Pomona* (2009) 46 Cal.4th 501, 511 [94 Cal.Rptr.3d 1, 207 P.3d 506] (*Hernandez*).) " 'Traditionally, we have applied the doctrine only if several threshold requirements are fulfilled. First, the issue sought to be precluded from relitigation must be identical to that decided in a former proceeding. Second, this issue must have been actually litigated in the former proceeding. Third, it must have been necessarily decided in the former proceeding. Fourth, the

decision in the former proceeding must be final and on the merits. Finally, the party against whom preclusion is sought must be the same as, or in privity with, the party to the former proceeding. [Citations.]' [Citation.]" (*Ibid.*) " 'The "identical issue" requirement addresses whether "identical factual allegations" are at stake in the two proceedings, not whether the ultimate issues or dispositions are the same. [Citation.]' [Citation.]" (*Hernandez, supra*, at pp. 511–512.)

■■ "Even if the minimal requirements for application of collateral estoppel are satisfied, courts will not apply the doctrine if considerations of policy or fairness outweigh the doctrine's purposes as applied in a particular case ([*Lucido v. Superior Court* (1990) 51 Cal.3d 335,] 342–343 [272 Cal.Rptr. 767, 795 P.2d 1223]), or if the party to be estopped had no full and fair opportunity to litigate the issue in the prior proceeding. (*Bostick v. Flex Equipment Co., Inc.* (2007) 147 Cal.App.4th 80, 97 [54 Cal.Rptr.3d 28]; *Gottlieb v. Kest* (2006) 141 Cal.App.4th 110, 148 [46 Cal.Rptr.3d 7].)" (*Zevnik v. Superior Court* (2008) 159 Cal.App.4th 76, 82 [70 Cal.Rptr.3d 817].)

■■ "Privity is a concept not readily susceptible of uniform definition. Traditionally it has been held to refer to an interest in the subject matter of litigation acquired after rendition of the judgment through or under one of the parties, as by inheritance, succession or purchase. [Citation.] The concept has also been expanded to refer to a mutual or successive relationship to the same rights of property, or to such an identification in interest of one person with another as to represent the same legal rights [citations] and, more recently, to a relationship between the party to be estopped and the unsuccessful party in the prior litigation which is 'sufficiently close' so as to justify application of the doctrine of collateral estoppel [citations].

■■ "Notwithstanding expanded notions of privity, collateral estoppel may be applied only if due process requirements are satisfied. [Citations.] In the context of collateral estoppel, due process requires that the party to be estopped must have had an identity or community of interest with, and adequate representation by, the losing party in the first action as well as that the circumstances must have been such that the party to be estopped should reasonably have expected to be bound by the prior adjudication. [Citation.] Thus, in deciding whether to apply collateral estoppel, the court must balance the rights of the party to be estopped against the need for applying collateral estoppel in the particular case, in order to promote judicial economy by minimizing repetitive litigation, to prevent inconsistent judgments which undermine the integrity of the judicial system, or to protect against vexatious litigation. [Citations.]" (*Clemmer v. Hartford Insurance Co.* (1978) 22 Cal.3d 865, 875 [151 Cal.Rptr. 285, 587 P.2d 1098].)

Moreover, "[a] person who is not a party but who controls an action, individually or in cooperation with others, is bound by the adjudications of litigated matters as if he were a party if he has a proprietary or financial interest in the judgment or in the determination of a question of fact or of a question of law with reference to the same subject matter or transaction . . . ." (Code Civ. Proc., § 1908, subd. (b); see *Minton v. Cavaney* (1961) 56 Cal.2d 576, 581 [15 Cal.Rptr. 641, 364 P.2d 473].)

### b. *The Existence of an Attorney-client Relationship Does Not Establish Privity for Purposes of Collateral Estoppel*

Defendants as nonparties to the family law proceeding can be bound by a finding in that proceeding only if they are in privity with a party to that proceeding. (*Hernandez, supra,* 46 Cal.4th at p. 511; *Shopoff & Cavallo LLP v. Hyon* (2008) 167 Cal.App.4th 1489, 1518 [85 Cal.Rptr.3d 268].) The trial court found privity based on Defendants' assertion of an attorney-client relationship between Woolverton and Kerner in connection with the family law proceeding.[21] In our view, however, the existence of an attorney-client relationship does not establish privity between the attorney and client for purposes of collateral estoppel under California law.

An attorney representing or counseling a client owes the client a duty of loyalty and has a duty to use such skill, prudence and diligence as other members of the profession commonly possess and exercise. (*People ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc.* (1999) 20 Cal.4th 1135, 1146–1147 [86 Cal.Rptr.2d 816, 980 P.2d 371]; *Lucas v. Hamm* (1961) 56 Cal.2d 583, 591 [15 Cal.Rptr. 821, 364 P.2d 685].) But an attorney for a party is not the party and does not share the party's legal rights and interests. Although an attorney may control the litigation to a significant degree, the attorney does so on behalf of the client rather than in service of the attorney's own interests.

Moreover, we believe that to find an attorney in privity with his or her client for purposes of collateral estoppel based on the existence of an attorney-client relationship could cause attorneys to consider not only their client's best interests with respect to the subject of the representation, but also the potential impact of any finding in the proceeding on the attorney's interests in another proceeding. This could create a potential conflict of interest in some circumstances and compromise the attorney's ability to faithfully serve the client's best interests.

---

[21] We conclude that an attorney-client relationship existed between Kerner and Woolverton, as we have stated. We note that at the time of the order on the motion in limine, the trial court had already determined that no such attorney-client relationship existed. Yet the court paradoxically relied on Defendants' argument that an attorney-client relationship existed to support its finding of privity.

Some courts have held that an attorney-client relationship establishes privity between the attorney and the client for purposes of res judicata or collateral estoppel. We find those opinions unpersuasive. Those cases involved the defensive use of res judicata as a merger or bar in favor of the attorney as a defendant in the later proceeding. Rather than expressly dispense with the requirement that both the party invoking res judicata and the party against whom the doctrine is invoked were parties to the prior proceeding or in privity with such a party, known as mutuality, or conclude that the action was barred on some other grounds, those courts with little or no meaningful analysis found privity, or its equivalent, based on an attorney-client relationship in the prior proceeding. (E.g., *Plotner v. AT & T Corp.* (10th Cir. 2000) 224 F.3d 1161, 1169; *In re El San Juan Hotel Corp.* (1st Cir. 1988) 841 F.2d 6, 10–11; *Henry v. Farmer City State Bank* (7th Cir. 1986) 808 F.2d 1228, 1235, fn. 6; *Jayel Corp. v. Cochran* (2006) 366 Ark. 175 [234 S.W.3d 278, 283–284]; *Chaara v. Lander* (2002) 132 N.M. 175 [45 P.3d 895, 897]; see also *Weinberger v. Tucker* (4th Cir. 2007) 510 F.3d 486, 492–493 [held that the attorney defendant was in privity with his former client so as to satisfy the mutuality requirement for collateral estoppel under Virginia law]; *Verhagen v. Arroyo* (Fla.Dist.Ct.App. 1989) 552 So.2d 1162, 1164 [held that strict mutuality was not required and that the attorney defendants were in privity with their clients in the prior proceeding for purposes of res judicata]; *Geringer v. Union Electric Co.* (Mo.Ct.App. 1987) 731 S.W.2d 859, 865 [held that the law firm defendant was in privity with its former client for purposes of collateral estoppel]; *Simpson v. Chicago Pneumatic Tool Co.* (2005) 2005 ND 55 [693 N.W.2d 612, 616–617] [held that the attorney defendants were in privity with their former client for purposes of both res judicata and collateral estoppel].)[22]

Wright and Miller describe this approach as "[b]ogus privity." (18A Wright et al., Federal Practice and Procedure (2d ed. 2002) Mutuality, § 4464.1, p. 716, fn. 4, citing, inter alia, *Plotner v. AT & T Corp., supra*, 224 F.3d at p. 1169, and *Henry v. Farmer City State Bank, supra*, 808 F.2d at p. 1235, fn. 6.) "One means adopted to accomplish nonmutual claim preclusion is to state that the party invoking preclusion is in privity with a party to the earlier action although the circumstances would not support a finding of privity to invoke preclusion against the new party. Although the results may be laudable, there is a price to be paid for this approach. Bogus findings of privity may cloud reasoning as later courts confront real privity questions, and may prevent the present court from considering and articulating the

---

[22] Some other courts, in contrast, have rejected the argument that an attorney is in privity with his or her client for purposes of the defensive use of res judicata. (*Rucker v. Schmidt* (Minn. 2011) 794 N.W.2d 114, 121; *Continental Savings Assn. v. Collins* (Tex.App. 1991) 814 S.W.2d 829, 832.)

factors that make it appropriate to allow nonmutual claim preclusion." (18A Wright et al., Federal Practice and Procedure, *supra*, at pp. 716–717, fn. omitted.)

We conclude that the attorney-client relationship between Woolverton and Kerner cannot establish privity between Woolverton, or any other defendant, and Kerner for purposes of collateral estoppel.

### c. *The Trial Court's Consideration of the Finding of Factual Innocence Was Improper*

Widom argued in his motion in limine that the finding in the family law proceeding that he did not commit domestic violence on March 1, 2009, was binding in this action under the doctrine of collateral estoppel. He referred to Defendants' purported involvement in the criminal proceeding, but he did not argue that the finding of factual innocence by the criminal court was collateral estoppel in this action or that it supported the conclusion that the finding in the family law proceeding that Widom did not commit domestic violence on March 1, 2009, was collateral estoppel in this action. The trial court in its ruling, however, apparently concluded that the finding of factual innocence was collateral estoppel in this action and supported the conclusion that the finding in the family law proceeding was also collateral estoppel in this action.

The trial court stated that the question whether Widom committed domestic violence against Kerner on March 1, 2009, "has actually been litigated on the merits twice," and that Defendants were in privity with Kerner with respect to the family law proceeding, the criminal proceeding and her civil action for damages. The court stated that Defendants' assertion of an attorney-client relationship between Woolverton and Kerner "supports Widom's argument that there is privity between Stockwell and Kerner such that the doctrine of collateral estoppel should apply to bar re-litigation of the March 1, 2009, incident where Mr. Widom has been declared factually innocent after a trial by jury and by a judge who reconsiders that based on his own appraisal of the evidence." The court stated that if the criminal prosecution had succeeded, Defendants would have sought to apply collateral estoppel in this action and that "now that the plan has essentially backfired on Stockwell, it seeks to prevent the use of collateral estoppel." The court stated further that the application of collateral estoppel was consistent with public policy because "there is no inherent contradiction or unfairness in applying collateral [estoppel], and its application, especially in this case, will preserve the integrity of the judicial system, promote judicial economy, and protect Mr. Widom from harassment by vexatious litigation of the exact same issue for which he has been declared factually innocent."

A finding of factual innocence under Penal Code section 851.8 cannot be considered as evidence in any action for any purpose, as we have stated. (*Id.*, subd. (i)(1).) The finding of factual innocence therefore cannot be collateral estoppel in this action and cannot support the determination that the finding in the family law proceeding is collateral estoppel in this action. The trial court erred by ruling to the contrary.

### d. *Conclusion*

We conclude that the granting of the motion in limine was error. There is no basis for the finding that Defendants were in privity with Kerner, and the trial court improperly considered the finding of factual innocence.[23] We therefore will grant Defendants' petition challenging the order granting the motion in limine and will direct the trial court to deny the motion.[24]

### *DISPOSITION*

Kerner's petition challenging the orders of May 19, 2011, and June 21, 2011, as to the granting of the motion to compel production of documents (No. B233918) is granted in part and denied in part. Let a peremptory writ of mandate issue directing the trial court to (1) vacate those orders as to the granting of the motion to compel production of documents and (2) conduct further proceedings and make explicit findings as discussed in this opinion. To the extent that she seeks an order allowing her to file objections asserting her attorney-client privilege, Kerner's petition is denied as premature.

Kerner's petition challenging the order of July 6, 2011, compelling her to answer deposition questions (No. B235664) and Defendants' petition challenging the order of May 19, 2011, as to the granting of the motion for net worth discovery (No. B234423) are granted. Let a peremptory writ of mandate issue directing the trial court to (1) vacate those orders as to those two matters and (2) reconsider, in light of the views expressed in this opinion, the motion to compel deposition answers and the motion for net worth discovery.

Defendants' petition challenging the order of September 26, 2011, granting the motion in limine (No. B236927) is granted. Let a peremptory writ of mandate issue directing the trial court to vacate that order and enter a new order denying the motion in limine.

---

[23] The trial court's consideration of the Stockwell firm's hiring of a private investigator in support of its finding of privity also raises concerns with respect to the litigation privilege, which we need not explore further in light of our conclusion.

[24] In light of our conclusions on this and other issues, we need not address Kerner's and Defendants' other contentions.

All stays of trial court proceedings previously issued by this court shall be vacated as of the date of the remittitur issued herein.

Kerner and Defendants are entitled to recover their costs in these appellate proceedings.

Klein, P. J., and Kitching, J., concurred.

On May 21, 2012, the opinion was modified to read as printed above. The petition of real party in interest for review by the Supreme Court was denied August 15, 2012, S203172.